902 F.2d 257
 23 Collier Bankr.Cas.2d 629, Bankr. L. Rep. P 73,414
In Re MEREDITH MANOR, INC.; Myrrdydd Corporation; Go Sign,
Inc.; Ronald W. Meredith and Faith F. Meredith,
d/b/a Meredith Manor School of
Horsemanship, Debtors.
William CRICHTON, V., Trustee, Defendant-Appellant,
v.
WHEELING NATIONAL BANK, a West Virginia corporation, Appellee,
and
United States Department of Education, Defendant.
 No. 89-1503.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 10, 1990.
Decided May 3, 1990.
As Amended May 21, 1990.
 
 Robert L. Bays, Ruley & Everett, Parkersburg, W.Va., for defendant-appellant.
 Jeffrey W. McCamic, McCamic & McCamic, Wheeling, W.Va., for appellee.
 Before HALL, Circuit Judge, and HOFFMAN and MERHIGE, Senior District Judges for the Eastern District of Virginia, sitting by designation.
 K.K. HALL, Circuit Judge:
 
 
 1
 William Crichton, trustee in this bankruptcy case, appeals from the district court's order vacating the judgment of the bankruptcy court and remanding for application of a different method of calculating the amount of the debtors' loan repayments which may be recovered as preferences. 103 B.R. 118. We hold that the district court correctly applied 11 U.S.C. Sec. 547(c), and we affirm.
 
 I.
 
 2
 The debtors obtained a $200,000 running line of credit from Wheeling National Bank (the Bank) in May, 1985. As security, they assigned to the Bank all accounts receivable and student contracts then held or thereafter acquired as part of the debtors' operation of a horsemanship school. The Bank called the line of credit in mid-November 1985, and this precipitated the filing of Chapter 7 petitions by the debtors on November 21, 1985.
 
 
 3
 The Bank then filed a complaint in the bankruptcy court requesting that the court establish the Bank's lien priority with regard to the accounts receivable and student contracts in which the Bank claimed a security interest. The Bank further requested that the trustee be directed to abandon such collateral to the appropriate parties and to lift the stay so as to permit collection. The trustee counterclaimed and requested that the court permit the recovery, as preferential payments, of all loan repayments made to the Bank during the ninety days preceding the filing of the bankruptcy petition.[1]
 
 
 4
 Cross-motions for summary judgment were made. The bankruptcy court granted the trustee's motion and ruled that he was entitled to recover $84,151.53 as preferential transfers from the Bank. On appeal by the Bank, the district court vacated the judgment and remanded with instructions to calculate the amount of avoidable preferences under a method which would yield a total of $31,705.28 as being recoverable by the trustee. The trustee appeals.
 
 II.
 
 5
 The trustee contends that the district court erred in its interpretation of 11 U.S.C. Sec. 547(c)(4).[2] He urges us to adopt a rule which would net each preference against only those subsequent advances to the debtor made prior to the next preference. We decline the invitation and adopt the approach of the district court.
 
 
 6
 The Bank concedes that the payments to it by the debtors within the ninety days preceding the bankruptcy filing constitute preferences under 11 U.S.C. Sec. 547(b). Moreover, the dates and amounts of the various preferences to the Bank and of the advances to the debtors are not in dispute.[3]
 
 
 7
 This appeal focuses on the manner in which the Sec. 547(c)(4) restrictions on the trustee's avoidance powers should be calculated in the context of an open credit line in which creditor advances and debtor repayments, i.e., preferences, are made at various points during the preference period. A comparison between the different methods chosen by the bankruptcy court and the district court serves to illuminate the prevailing theories.
 
 
 8
 The bankruptcy court adopted the approach approved in Leathers v. Prime Leathers Finishes Co., 40 B.R. 248 (D.Maine 1984). Basically, under the Leathers approach, the creditor is protected only to the extent that it gives "new value" subsequent to each preference but before the next payment is received from the debtor. This approach essentially divides the 90-day preference period into a series of isolated transactions in which the "new value given" by the creditor is netted only against the immediately preceding preference.
 
 
 9
 Applying this approach to the facts of this case, the bankruptcy court ruled as follows:
 
 
 10
 (1) The initial $30,444.82 payment is fully recoverable by the trustee because it was not immediately followed by the giving of any "new value";
 
 
 11
 (2) The next preference payment, $75,000, exceeded the next four advances by $53,151.92; this excess is recoverable;
 
 
 12
 (3) Each of the next two payments, $9,000 and $6,000, was exceeded by the immediately following advancements; therefore, the full amount of the preferences is protected from the trustee's avoidance powers;
 
 
 13
 (4) The final payment by the debtor, $1,214.79, was followed by a smaller advance of $660.00. The trustee could therefore avoid the difference, $554.79. To summarize, the bankruptcy court found that $84,153.53 [30,444.82 + 53,151.92 + 554.79] was avoidable and thus recoverable by the trustee. The Bank was entitled to retain the remaining $37,508.08 [$121,659.61 - $84,153.53].
 
 
 14
 On appeal, the district court opted for the variation of the net result rule formulated in In re Thomas W. Garland, Inc., 19 B.R. 920 (Bankr.E.D.Mo.1982). This method looks at the 90-day preference period and calculates the difference between the total preferences and the total advances, provided that each advance is used to offset only prior (although not necessarily immediately prior) preferences. Unlike Leathers, Garland permits preferences to be carried forward until exhausted by subsequent advances. In other words, the creditor is allowed to apply the giving of "new value" against the immediately preceding preference as well as against all prior preferences.[4] Using the stipulated schedule of payments[5], the district court calculated that the preferences exceeded advancements by $31,705.28 [$121,659.61 - $89,954.33], and this amount was found to be recoverable by the trustee under Sec. 547(b).
 
 
 15
 After consideration of both methods, we think the district court was correct in its assessment that the Garland rule, in addition to better serving the legislative goal of encouraging creditor assistance to financially troubled debtors, also reflects a more realistic view of commercial practices. An open credit line is a fluid relationship which normally does not emphasize individual loan repayments. Instead, it is the debtors' entire financial picture and repayment history, not the latest payment, which are the bases for maintaining the line of credit. For the reasons more completely set forth in Garland, we affirm the district court.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 By agreed orders, the debtors and the U.S. Department of Education were dismissed as defendants in the adversary proceeding before the bankruptcy court
 
 
 [2]
 Section 547(c)(4) of the Bankruptcy Code [11 U.S.C. Sec. 547(c)(4) ] provides:
 (c) The trustee may not avoid under this section a transfer ...
 (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor--
 (A) not secured by an otherwise unavoidable security interest; and
 (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor; ....
 
 
 [3]
 Advances by the Bank and preferential payments by the debtors were made as follows:
 DATE ADVANCES TO DEBTORS PAYMENTS TO BANK
 9/11/85 $ 30,444.82
 9/12/85 $ 75,000.00
10/04/85 $10,000.00
10/06/85 10,348.08
10/11/85 1,500.00
10/18/85 6,000.00 9,000.00
10/21/85 11,000.00
10/25/85 2,000.00
10/28/85 6,000.00
10/29/85 4,600.00
10/30/85 4,699.00
11/05/85 18,461.80
11/07/85 11,664.05
11/09/85 1,965.00
11/13/85 1,404.89
11/14/85 5,651.51
11/15/85 1,214.79
11/18/85 660.00
 ---------- -----------
 $89,954.33 $121,659.61
 
 
 [4]
 The greatest impact that the different methods have in the instant case is in the way each treats the initial $30,444.82 preference. Under Leathers, the fact that no "new value" was given immediately after such transfer, i.e., prior to subsequent preferences, leads to a determination that this amount is fully avoidable. Under Garland, however, the $30,444.82 payment is carried forward and offset by all subsequent advances
 
 
 [5]
 See note 3, supra