In re AMICK, David W. and Amick, Shirley Kay, f/d/b/a Classique Carpets, Debtors.

AMICK, David W. and Amick, Shirley Kay, f/d/b/a Classique Carpets, Plaintiffs,

v.

HOFF COMPANIES, INC., f/d/b/a Western Forest Products, Defendant.

Bankruptcy No. 92–03201.
Adv. No. 93–6151.

United States Bankruptcy Court, D. Idaho.

Jan. 28, 1994.

Howard R. Foley, Foley & Freeman, Meridian, ID, for plaintiffs.

David E. Wishney, Boise, ID, for defendant.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

### PLEADINGS

#### I.

In this adversary proceeding, the plaintiffs' complaint alleges the defendant, Hoff Companies, Inc., f/d/b/a Western Forest Products, received transfers which constitute preferential transfers under the provisions of 11 U.S.C. § 547. Specifically, the complaint alleges that within 90 days prior to the filing of the debtors' chapter 11 petition, the debtors transferred to the defendant, for and on account of an antecedent indebtedness, $22,-860.45, in two payments, on the debtors' open account; at the time of the transfers the debtors were insolvent, and the effect of such transfers enables the defendant to obtain more than it would have received under chapter 7 of the Bankruptcy Code if the transfers had not been made.

#### II.

The answer of the defendant, Hoff Companies, Inc. denies a preference occurred as a result of its receipt of the two payments and affirmatively alleges payments were received in consideration for a contemporaneous exchange for which new value was given the debtors; that the payments were received in payment of debts incurred by the debtors in the ordinary course of their business or financial affairs and were made by the debtors in the ordinary course of their business or financial affairs; and that the transfers created a security interest in property acquired by the debtors which security interest secured new value afforded the debtors.

#### III.

Prior to trial the parties filed a stipulation of facts. It is agreed the defendant received the sum of $22,860.45 in the form of two checks within 90 days of the filing of plaintiffs' chapter 11 petition. The checks were drawn upon the account of Central Station Development, Inc. ("Central Station"), a client of the plaintiffs, and contained two payees: the plaintiffs and the defendant. The check delivered under date of August 11, 1992 was in the amount of $12,083.13. The check delivered under date of September 10, 1992 was in the amount of $10,777.32.

#### IV.

Both the second transfer, and the larger part of the first transfer, meet the initial requirements for finding the transfers preferential. They were made to a creditor for antecedent debts owed by the defendants before the transfers were made. At the time of making the transfers, the plaintiffs/debtors were insolvent. The transfers were made within 90 days before the date of the filing of the plaintiffs' chapter 11 petition and the transfers would enable the defendant to receive more than if the case were a case under chapter 7 of Title 11, United States Code. The only issue is whether the affirmative

defenses prevent the transfers from being avoided.

■ The defendant argues no preference occurred because the checks contained the name of the defendant as co-payee with the plaintiffs. In essence, defendant's argument is that the payment falls within the "earmarking" doctrine.

The "earmarking" defense is an exception to what would otherwise be a voidable transfer and therefore property of the Debtor's estate. The doctrine provides that if property transferred in payment of a debt was never truly within the control of the debtor or subject to the debtor's direction, then a transfer of such property would not be a preference as such assets are not considered property of the estate under § 541 of the Bankruptcy Code.... The dispositive question is whether the Debtor had direct control of the funds.... Thus, if the Debtor had little or no control over the use of the funds or if the transaction involves a complete substitution of a new creditor for a former creditor, the defense is valid. Conversely, if the Debtor maintains some meaningful control over the funds or actual control over the new creditor's funds, then earmarking is not a defense and the funds become property of the estate.

*Estate of Love v. First Interstate Bank of Montana (In re Love)*, 155 B.R. 225, 230 (Bankr.D.Mont.1993) (citations omitted). *See also Sierra Steel, Inc. v. S & S Steel Fabrication (In re Sierra Steel, Inc.)*, 96 B.R. 271, 274 & n. 6 (9th Cir. BAP 1989) (discussing nature of earmarking doctrine).

There is no evidence to indicate Central Station made the payment to the plaintiffs solely on the condition that those proceeds were to be used to pay the defendant. The record indicates it was the plaintiffs who requested the checks be made payable to both plaintiffs and the defendant. "If the debtor determines the disposition of the funds from the third party and designates the creditor to be paid, the funds are available for payment to creditors in general and

the funds are assets of the estate." *Knapp v. Applewhite (In re Knapp)*, 119 B.R. 285, 287 (Bankr.M.D.Fla.1990) (citations omitted). The obligation owing from Central Station was property of the plaintiffs/debtors, and the transfer to another creditor of the funds satisfying that obligation thereby diminished the estate. The funds are, as a result, not excepted from the preferential transfer laws by the earmarking doctrine.

■ Further, the payments did not create a security interest in the funds that would allow the defendant to benefit by the affirmative defense afforded by 11 U.S.C. § 547(c)(3). The transfer of the checks to the defendant did not create a security interest in the funds. The only interest the defendant had in the funds, upon presentation to it of the checks, was to apply the proceeds to the plaintiffs' account.

### V.

■ Of the August 11 payment of $12,083.13, $9,316.03 was applied by the defendant to past due accounts. A total of $2,767.10 was applied to the account as a credit balance. This credit balance was debited by the defendant on the plaintiffs' next purchase which occurred on August 17, 1992.[1]

The defendant has shown that its collection practices, at least for purchases made after the 10th day of a calendar month were, in the ordinary course of business and without being considered delinquent, due before the end of the succeeding calendar month.

Of the August 11th payment, $9,316.03 was not made in a contemporaneous exchange since it was applied to purchases made by the plaintiffs between ninety-one and fifty-five days previous to the payment. For the same reason, it was not a payment made in the ordinary course of business or financial affairs between the plaintiffs and the defendant.

The defendant applied all of the September 10th payment to payment of current

---

1. This credit balance is not a preference, because it was not paid for or on account of an anteced-
ent debt. 11 U.S.C. § 547(b)(2).

accounts. These two transactions were purchases by the plaintiffs from the defendant on August 17, and 27, 1992. The August 17th debt was 24 days old and the August 27th debt was 14 days old. The August 17 and 27 purchases were thus not delinquent when payment was made on September 10, 1992.

It is found the September 10, 1992 payment of $10,777.32 was for payment of a debt, made by the plaintiffs/debtors in the ordinary course of business between the plaintiffs and the defendant.

The defendant further contends it is entitled to a set-off against any preferential recovery by the plaintiff in the amount of $2,578.65, the amount remaining due after the credit of the September 10th check. Section 547(c)(4) provides:

> (c) The trustee may not avoid under this section a transfer—
>
>     \*    \*    \*    \*    \*    \*
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor; ....

11 U.S.C. § 547(c)(4). This section codified the net result rule, a judicially-created rule under the Bankruptcy Act of 1898. *McClendon v. Cal–Wood Door (In re Wadsworth Bldg. Components, Inc.)*, 711 F.2d 122, 123–24 (9th Cir.1983). The pre-Code version of the net result rule examined all of the transactions between the debtor and the creditor during the preference period. If more credits than payments occurred, the creditor was not liable for a preference, even though some of the individual payments might otherwise qualify as a preference. *Wadsworth,* 711 F.2d at 123. However, section 547(c)(4) is the exclusive net result rule under the Bankruptcy Code. *Wadsworth,* 711 F.2d at 124.

The adoption of section 547(c)(4) did not end controversy regarding the now-statutory net result rule. In *Leathers v. Prime Leather Finishes Co.,* 40 B.R. 248 (D.Me.1984), the court dealt with a series of preferences and advances of new value. The court held that, where new value is advanced to the debtor, the "credit" for the new value under section 547(c)(4) only applies to the immediately preceding preference. 40 B.R. at 251. If the new value exceeds the amount of the immediately preceding preference, that excess new value cannot be credited against any other preferential payment.

Other courts have rejected the *Leathers* result. Typical of these cases is *Crichton v. Wheeling Nat'l Bank (In re Meredith Manor, Inc.),* 902 F.2d 257 (4th Cir.1990). The method used by the Fourth Circuit "looks at the 90–day preference period and calculates the difference between the total preferences and the total advances, provided that each advance is used to offset only prior (although not necessarily immediately prior) preferences." 902 F.2d at 259. This manner of calculating the offset is the majority rule. *Successor Committee v. Bergen Brunswig Drug Co. (In re Ladera Heights Community Hospital, Inc.),* 152 B.R. 964, 969 (Bankr. C.D.Cal.1993).

The difference between these two methods may be more easily understood in hypothetical form. A debtor makes two preferential payments: the first of $5,000, and the second of $3,000. The creditor then advances the debtor $10,000 worth of goods. Under *Leathers,* the creditor may set off the $10,000 of new value against the $3,000 payment, completely eliminating any liability for that preference. None of the new value may be offset against the $5,000 prior preference, because of the intervening preferential payment of $3,000. The creditor is liable for a $5,000 preference.

Under *Meredith Manor,* the result is completely different. Because the grant of new value occurred after both preferences were made, the new value can be offset against both preferences. Thus, the $10,000 is credited against both the $3,000 and the $5,000 transfers. The amount of the preferences do not exceed the amount of new value granted, and so the creditor has no liability for any preferential payments.

■ The *Meredith Manor* rule better accords with the plain language of section 547(c)(4). Section 547(c)(4) only requires that the advance of new value occur after a preferential payment has been made; it does not require that there have been no intervening payments. By its terms, then, the grant of new value should apply to offset any preference, so long as the preferential payment was made before the new value was given. This conclusion additionally advances "the legislative goal of encouraging creditor assistance to financially troubled debtors." *Meredith Manor*, 902 F.2d at 259. *See also Ladera Heights*, 152 B.R. at 969.

■ The September 10th payment paid for $10,777.32 worth of purchases made the previous month. The defendant provided additional new value in the amount of $2,578.65. Whether this new value was delivered on August 17th or August 24th, it was delivered after the August 11th preferential payment. Pursuant to section 547(c)(4), the defendant is entitled to a credit of $2,578.65 against the preference of $9,316.03. The defendant is therefore liable for a total preferential payment of $6,737.38.

Judgment will be entered for the plaintiff in the amount of $6,737.38 plus costs.