**In re Patricia L. HURT, Debtor.**

**Gary T. RAFOOL, Trustee, Plaintiff,**

v.

**CITIZENS EQUITY FEDERAL CREDIT UNION, Defendant.**

Bankruptcy No. 95–82928.
Adv. No. 96–8064.

United States Bankruptcy Court,
C.D.Illinois.

Nov. 19, 1996.

Sumner A. Bourne, Rafool & Bourne, Peoria, IL, for Plaintiff.

Thomas L. Perkins, Quinn, Johnston, Henderson & Pretorius, Peoria, IL, for Defendant.

**OPINION**

WILLIAM V. ALTENBERGER, Chief Judge.

In this adversary proceeding the Debtor's Trustee in Bankruptcy (TRUSTEE) brought a preference action against the Defendant (DEFENDANT), which defended on the theory of the "Earmarking" Doctrine. The facts were stipulated to as follows.

In September of 1995 the Debtor held a credit card issued by the DEFENDANT which had an outstanding balance of $4,022.95. The Debtor was solicited by the First Union National Bank of Georgia (BANK) to transfer her existing credit card balances to the BANK through the use of

"balance transfer checks" issued by the BANK.[1] In September of 1995 the Debtor used one of the checks to transfer $3,200.00 from the DEFENDANT to the BANK. In October of 1995 she used another check to transfer $855.51 from the DEFENDANT to the BANK. She also used two checks to transfer $3,045.82 from First Card to the BANK and $1,000.00 from MBNA to the BANK.

After the Debtor filed her Chapter 7 case in bankruptcy, the TRUSTEE sued the DEFENDANT to recover the two transfer payments as preferential payments under § 547 of the Bankruptcy Code, 11 U.S.C. § 547. The DEFENDANT relies on the "Earmarking" Doctrine, contending that the Debtor did not control the funds, the funds could only be used to repay other debt, and that the transfers amounted to one creditor being substituted for another. The TRUSTEE contends that the doctrine does not apply because the Debtor designated the specific creditors to be paid. This Court agrees with the TRUSTEE.

■ Tracing the history of the judicially created "earmarking doctrine," the court in *In re Bohlen Enterprises, Ltd.,* 859 F.2d 561 (8th Cir.1988), stated:

When new funds are provided by the new creditor to or for the benefit of the debtor for the purpose of paying the obligation owed to the old creditor, the funds are said to be "earmarked" and the payment is held not to be a voidable preference.

The earliest enunciation of the doctrine occurred in cases where the new creditor providing new funds to pay off the old creditor, was himself also obligated to pay that prior debt. In other words, the new creditor was a guarantor of the debtor's obligation, such as a surety, a subsequent endorser or a straight contractual guarantor. Where such a guarantor paid the debtor's obligation directly to the old creditor, the courts reject the claim that such payment was a voidable preference. (Citations.) The holding rested on a finding

that the new creditor's payment to the old creditor did not constitute a transfer of the debtor's property. The courts buttressed this conclusion with the rationale that no diminution of the debtor's estate had occurred since the new funds and new debt were equal to the preexisting debt and the amount available for general creditors thus remained the same as it was before the payment was made. A possible additional rationale may have been the view that such a result was needed to avoid unfairness and inequity to the new creditor. If his direct payment to the old creditor was voided, and the money was ordered placed in the bankruptcy estate, the new creditor, as guarantor, would have to pay a second time.

Where the guarantor, instead of paying the old creditor directly, entrusted the new funds to the debtor with instructions to use them to pay the debtor's obligation to the old creditor, the courts quite logically reached the same result. . . .

Noting that courts had extended the doctrine to instances where a new creditor loans funds to the debtor for the purpose of enabling the debtor to pay an old creditor, the court questioned its expansion and set the following requirements for a transaction to qualify for the earmarking doctrine:

(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt,

(2) performance of that agreement according to its terms, and

(3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate.

Although modern caselaw has expanded the doctrine, the majority of decisions limit application of doctrine to instances where the new monies are "earmarked" for a specific creditor. *See In re Safe–T–Brake of South Florida, Inc.,* 162 B.R. 359 (Bkrtcy.S.D.Fla.1993);

---

1. Copies of the checks are attached to the Amended Stipulation. A copy of the agreement between the Debtor and the BANK is not.

*In re Amick,* 163 B.R. 589 (Bkrtcy.D.Idaho 1994); *Matter of Howdeshell of Ft. Myers,* 55 B.R. 470 (Bkrtcy.M.D.Fla.1985). Unless the funds are solely available to pay "a particular debt to a particular creditor," the doctrine does not apply. *In re Jaggers,* 48 B.R. 33 (Bkrtcy.W.D.Texas 1985).

■ At the time the Debtor filed bankruptcy, she was laden with credit card debt. Her schedules list the following unsecured creditors:

| | |
|---|---|
| Chase Gold Visa | $4,308.56 |
| Choice Visa | 5,317.31 |
| Colonial National Bank | 1,978.99 |
| First USA Bank | 3,316.94 |
| First Union Visa Gold | 7,931.19 |
| MBNA America | 9,976.36 |
| Northwest Bank South Dakota, NA | 119.06 |

According to the stipulation of facts, the funds made available to the Debtor by the BANK were not designated to be used to pay off certain specified creditors but were to be used to pay off some but not all of a particular class of creditors. This choice was to be made entirely by the Debtor. Given these facts, this Court finds that the "earmarking doctrine" is inapplicable.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.