**Lawson F. BERNSTEIN, Trustee in Bankruptcy of Frigitemp Corp., Plaintiff,**

v.

**HOME LIFE INSURANCE COMPANY, Defendant.**

No. 81 Civ. 3249.

United States District Court, S.D. New York.

Dec. 6, 1982.

---

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff; Robert M. Kornreich, New York City, of counsel.

Thomas F. Coughlin, New York City, Herman, Herman & Katz, New Orleans, La., for defendant; Sidney A. Cotlar, New Orleans, La., of counsel.

SOFAER, District Judge:

Plaintiff Lawson F. Bernstein, the Trustee in Bankruptcy of Frigitemp Corporation, has sued defendant Home Life Insurance Company to recover an alleged voidable preference paid by Frigitemp to Home Life. Home Life has moved for summary judgment, claiming that payments it received from Frigitemp within four months of Frigitemp's bankruptcy petition were not preferential.

The relevant facts are adequately supported by affidavits and exhibits submitted by both parties and are not meaningfully controverted by plaintiff. In April 1975, Home Life issued a group insurance policy providing major-medical coverage for eligible Frigitemp employees. On September 1, 1977 Frigitemp failed to pay a $75,205.59 premium due for that month. The policy, however, included a 31-day grace period, and Home Life therefore processed Frigitemp employee claims incurred in (*i.e.* resulting from events occurring during) September 1977. When on October 2, 1977 Frigitemp had still not paid the premium for September, the policy lapsed by its

terms and Home Life stopped processing newly incurred Frigitemp employee claims.

In December 1977, Frigitemp and Home Life reached an agreement whereby Home Life would reinstate the policy and process claims incurred in October and November in exchange for a $151,895.85 payment from Frigitemp representing the $75,205.59 premium for September as well as a $76,690.26 premium for October. On December 22, 1977, Home Life received $151,895.85 from Frigitemp and began processing the October and November claims which it had been holding in abeyance. Although at that point the November payment was overdue, and the policy's grace period had once again expired, Home Life appears to have extended the grace period beyond that provided in the policy by processing claims incurred through December 1977. This extension was apparently due to Frigitemp's assurances that further premium payments would be forthcoming and to Home Life's subsequent inability to rescind the extension without substantial confusion when premium payments for November ($77,303.28) and December ($81,180.17) were not paid. See Affidavit of John J. Egan (October 20, 1982), Attachments 4 & 5. In any event, on January 1, 1978 Home Life treated the policy as having once again lapsed.

On March 20, 1978, Frigitemp filed for an arrangement under Chapter 11 of the 1898 Bankruptcy Act and was authorized to operate as a debtor-in-possession. The Bankruptcy Court specifically permitted Frigitemp to pay "any and all insurance premiums (other than life insurance) that were accrued but not paid prior to the filing of the original petition herein." Pursuant to this provision, Frigitemp and Home Life entered into a second agreement in May 1978 reinstating the policy retroactive to January 1, 1978 in exchange for a $400,000 premium payment. On July 12, 1978 Home Life paid Frigitemp a premium rebate of $124,246.03, based on a formula in which claims, expenses, and other charges are subtracted from total premiums paid. The policy thereafter remained in effect until May 29, 1979, when Frigitemp entered liquidation proceedings and the policy was permanently terminated.

The Trustee maintains that the December 22, 1977 payment which reinstated the policy following its lapse on October 2, 1977 was a voidable preference. Section 60(a)(1) of the 1898 Bankruptcy Act, 11 U.S.C. § 96(a)(1) defines a preference as

a transfer ... of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

The December 22 payment was made within four months of the March 20, 1978 bankruptcy petition and, for purposes of this motion, Frigitemp's insolvency at the time of payment is assumed.

■ Home Life denies that the $151,895.85 it received on December 22, 1977 was "for or on account of an antecedent debt." As far as the $76,690.26 attributable to the October premium is concerned, defendant is plainly correct. Home Life stopped processing newly incurred Frigitemp employee claims when the policy lapsed on October 2, 1977. Only after receipt of the December 22 payment did Home Life reinstate the policy and resume processing October claims. The October premium was therefore paid not for an antecedent debt but rather for present consideration in the form of processing and payment on claims arising from October occurrences. At least as far as preferences are concerned, "services rendered followed by payment is [not] equivalent to payment followed by services rendered." In re Mobley, 15 B.R. 573, 575 (Bkrtcy.S.D.Ohio 1981).

■ The $75,205.59 paid for the September premium presents a more difficult issue. Frigitemp employee claims incurred in September had been and were being processed and paid by Home Life when it received the December 22 payment. Because of the 31-

day grace period, the policy remained in effect for September despite the failure to pay the premium for that month. Thus, Frigitemp's December payment of the September premium was for services which Home Life had either rendered or would render regardless of whether the premium was paid. As such, payment of the September premium was "for or on account of an antecedent debt."

A payment for an antecedent debt is not, however, by that fact alone a voidable preference. To be voidable, the payment must also have the effect of enabling the creditor to obtain more than its fair share of the debtor's assets. "The purpose of the law of preferences is to secure an equal distribution of the bankrupt's assets among his creditors of like class. If a transaction, or series of transactions in their entirety, do not interfere with this purpose it does not constitute a voidable preference." *Farmers Bank v. Julian,* 383 F.2d 314, 327 (8th Cir.), *cert. denied,* 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967). Given the entire series of transactions between Home Life and Frigitemp, Frigitemp's payment of the September premium cannot fairly be viewed as interfering with the goal of an equal distribution of Frigitemp's assets among its creditors.

Although the payment was made primarily to discharge Frigitemp's debt to Home Life for the September coverage, it also caused Home Life retroactively to extend grace-period coverage for November. The price for September coverage, $75,205.59, was less than that for November coverage, $77,303.28. Home Life thus effectively extended new credit in the form of unpaid-for services of greater value than the antecedent debt extinguished by the allegedly preferential payment. As a result, following the December 22 transaction Home Life was in essentially the same position under its Frigitemp policy as before the transaction, *i.e.,* it was owed the premium for one month's worth of processed claims. As for Frigitemp, the $75,205.59 it paid in cash was at least theoretically balanced by the $77,303.28 gain it realized when its employees' November claims were paid.

Section 60(c) of the 1898 Bankruptcy Act, 11 U.S.C. § 96(c) specifically provides:

> If a creditor has been preferred, and afterward in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estate, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him.

"Property" in § 60(c) may include services which do not result in a traceable, balance-sheet increase in the assets of the debtor. *In re Ira Haupt & Co.,* 424 F.2d 722, 724 (2d Cir.1970). It is thus not fatal to defendant's case that no specifically identifiable property became part of Frigitemp's estate as a result of the credit extended by Home Life in the form of November coverage. Moreover, even if § 60(c) is not exactly applicable, its provisions confirm that the overriding purpose of the preference law is "to require the preferred creditor to surrender only the net amount of the benefit he received in excess of that received by other creditors of his class." *Farmers Bank, supra; see In re Thomas W. Garland, Inc.,* 19 B.R. 920, 924–25 (Bkrtcy.E.D.Mo.1982); *In re Fulghum Construction Co.,* 7 B.R. 629, 646–47 (Bkrtcy.M.D.Tenn.1980). When Frigitemp was adjudicated in bankruptcy on March 20, 1978, the arguably preferential payment Home Life received for the September coverage was more than offset by the unpaid services performed by Home Life as a result of the policy's reinstatement. That Home Life was eventually paid under the Bankruptcy Court's order for the November coverage is irrelevant to the question whether at the time of the bankruptcy petition Home Life had received a voidable preference. It would be anomalous to conclude that, by authorizing payment of certain pre-petition debts, the Bankruptcy Court caused the pre-petition payment of a similar debt to become a voidable preference.

The $124,246.03 premium rebate paid by Home Life to Frigitemp in July 1978 must

also be considered in determining whether the December 1977 payment for September coverage enabled Home Life to gain an unfair advantage over Frigitemp's other creditors. Although no provision of the Bankruptcy Act provides specific guidance as to how this rebate should be treated, Home Life plainly made a substantial sum available to Frigitemp as debtor-in-possession and thus to the creditors now represented by the Trustee. Under the policy, unless all premiums have been paid in a given year, Home Life is not obligated to pay any rebate for that year. Alternatively, however, Home Life may simply reduce the rebate by the full amount of any premiums due. In fact, the July rebate was reduced from $143,266.27 to $124,246.03 because of past due premiums of $19,020.24. *See* Affidavit in Opposition of Patricia I. Avery, Esq. (October 12, 1982), Exhibit J. Therefore, if the September premium had remained unpaid, and Home Life had nevertheless agreed to continue the policy following the April 1978 payment, the rebate would never have been owed to Frigitemp. As demonstrated by the fact that Home Life reduced the July rebate by $19,020.24 in unpaid premiums, Home Life at least would have been entitled further to reduce the rebate by the amount of the September premium. *See In re Dynamic Electronics,* 120 F.Supp. 126 (S.D.N.Y.1954); *In re Mortman,* 36 F.Supp. 897 (E.D.N.Y. 1941).

The trustee's effort to ignore the rebate is in effect an effort to undo a completely performed contract, in which the September and October payments were part of the consideration paid by Frigitemp to entitle it to the rebate. Only by keeping the contract of insurance alive for that entire year, was Frigitemp able to claim its rebate. The trustee cannot now seek to undo a piece of that year's agreed-upon exchanges, thus depriving Home Life of part of the benefits of the bargain it made in making its end-of-the-year payment. The premium surplus that accumulated in Home Life's hands represented an economic cushion that the insurance company was entitled to rely upon as a form of security for the insured's

payment of premiums due. To deprive Home Life of this contractual advantage would in no way serve the bankruptcy law's goal of preventing unfair advantage to selected creditors; rather it would unfairly disadvantage Home Life by transforming its premium rebate into a gratuitous donation to the pool of funds available to all creditors.

For the foregoing reasons defendants' motion for summary judgment is hereby granted.

SO ORDERED.