Kirstein **LEATHERS**, et al., Plaintiffs,

v.

**PRIME LEATHER FINISHES CO.**, Defendant.

Civ. No. 83–0190 P.

United States District Court,
D. Maine.

May 29, 1984.

---

Gregory A. Tselikis, Charles E. Miller, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for plaintiffs.

Ellsworth T. Rundlett, III, Childs, Emerson, Rundlett & Fifield, Portland, Me., Harold M. Frauendorfer, Milwaukee, Wis., for defendant.

## OPINION AND ORDER

GENE CARTER, District Judge.

Debtors in the bankruptcy proceeding underlying this action filed petitions under Chapter 11 of the Bankruptcy Code on March 26, 1981. In May the case was converted to Chapter 7 and the Trustee was appointed. In this action the Trustee seeks to recover, as avoidable preferences, payments totalling $123,407.52 made by the debtor to the Defendant, Prime Leather Finishes Co. Defendant argued that the payments were not preferential transfers

because they fell under exceptions to the preference rule set forth in 11 U.S.C. § 547(c)(1), (2) and (4). The Bankruptcy Court determined that all but $24,593.72 of the money paid to Defendant by the debtors was exempted from the category of preferential transfers under 11 U.S.C. § 547(c)(4),[1] the new value exception.

On appeal Defendant argues that the bankruptcy judge should have applied the net result rule in determining the amount of the payments to it that do not constitute preferential transfers. Defendant also argues that the services of a technical consultant it provided to the debtor should have been included in the Bankruptcy Court's assessment of the new value to be netted against debtor's payments in calculating the exception.

On cross appeal, the Trustee challenges the specific application of § 547(c)(4) to the instant case in two respects. First he asserts that the Bankruptcy Court erred in concluding that the date of a transfer under § 547(c)(4) is the date of the receipt of debtor's check by the Defendant rather than the date the check clears the payee bank. The Trustee also contends that the Court erred by permitting the deduction of new value before subsequent preferential transfers.

The exception applied by the court below in reaching its result is found in 11 U.S.C. § 547(c)(4). That subsection provides:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

Section 547(c)(4) has been construed by the overwhelming majority of courts as a

subsequent advance rule which protects a transfer from preference attack to the extent that a creditor thereafter replenishes the estate. The new value given is to be netted only against a previous preferential transfer not against any subsequent transfers. *In re Jericho,* 22 B.R. 1013 (Bkrtcy. S.D.N.Y.1982); *see also In re Fulghum Construction Corp.,* 706 F.2d 171 (6th Cir. 1983); *In re Rustia,* 20 B.R. 131 (Bkrtcy.S. D.N.Y.1982); *In re Thomas W. Garland, Inc.,* 19 B.R. 920 (Bkrtcy.E.D.Mo.1982); *In re Bishop,* 17 B.R. 180 (Bkrtcy.N.D.Ga. 1982). The Bankruptcy Court below applied this procedure, isolating transfers by the debtor within the preference period on January 19, 1981, February 2, 1981, February 17, 1981, February 27, 1981, and March 12, 1981, and netting each against the value of shipments made by Defendant after that transfer but before the next transfer.

Defendant contends that this procedure was in error and that the bankruptcy judge should have applied the "net result rule." If he had done so, the judge would have netted the total value of all the shipments made during the preference period against the total payments made by the debtor to Defendant during the same period, resulting in a finding of no net preference.

■ The so-called "net result rule," application of which is urged upon this Court by Defendant, is a judicially created doctrine which evolved early in this century to correct the perceived inequities of the Bankruptcy Act of 1898. *In re Fulghum,* 706 F.2d at 173; *In re Garland,* 19 B.R. 922–25. The Court finds that it has no vitality under the Bankruptcy Code which deals specifically with the question of new value given during the preference period in § 547(c)(4). Defendant argues that Congress intended to codify the net result rule in § 547(c)(4). Although Congress may, in a broad sense, have desired to codify the equitable result achieved by the net result rule, it is clear that its intent was more

---

**1.** The Court also determined that the exceptions set forth in 11 U.S.C. § 547(c)(1) and (2) were

not applicable in this case.

restrictive in scope than is the judicially created rule. The legislative history states:

> The fourth exception [§ 547(c)(4) ] codifies the net result rule in section 60c of current law. If the creditor and the debtor have more than one exchange during the 90-day period, *the exchanges are netted out according to the formula in paragraph (4).*

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 374, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6330 (emphasis added). The formula as set forth in (4) provides that a transfer may not be avoided to the extent that *"after such transfer,* such creditor gave new value to or for the benefit of the debtor." 11 U.S.C. § 547(c)(4) (emphasis added).

■ Defendant relies on the bankruptcy and district court decisions in *In re Fulghum,* 7 B.R. 629 (Bkrtcy.Tenn.1980) 14 B.R. 293 (D.C.D.Tenn.1981), to support its contention that the net result rule coexists with § 547(c)(4). However, as the Sixth Circuit pointed out in reversing these decisions, such a construction would constitute judicial legislation. *In re Fulghum,* 706 F.2d 173. The Bankruptcy Court acted properly, therefore, in rejecting the net result rule and applying § 547(c)(4), in accordance with the formula in paragraph (4), to the exchanges between the parties in this case.

■ The Court also finds the Trustee's argument that the bankruptcy judge misapplied § 547(c)(4) to be without merit. The Court agrees with the Trustee that the proper mode of analysis is that after each preferential payment, an assessment must be made as to how much property the creditor restored to the debtor before the next preferential payment was made. The bankruptcy judge did just that, and his calculations are therefore correct assuming that the date of a transfer by check for purposes of § 547(c)(4) is the date the check is received, rather than the date it is honored by the bank.

■ The Trustee contends that the proper date of transfer under § 547(c)(4) is the date the check is honored by the drawee's bank. An examination of the legislative history of § 547 reveals that the time of the transfer is not necessarily the same for all purposes. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 373–74, U.S. Code Cong. & Admin.News 1978, pp. 5787, 6329, 6330; Senate Report No. 95–989, 95th Cong., 1st Sess. (1978) 88, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5874. *See also In re Gold Coast Seed,* 30 B.R. 551 (Bkrtcy.App. 9th Cir.1983). In the cases cited by the Trustee, the date of a transfer by check for purposes of determining whether or not it falls within the 90-day preference period is set at the date the check is honored by the bank. *See In re Duffy,* 1 C.B.C.2d 641 (Bankr.S.D.N.Y. 1980); *In re Sportsco, Inc.,* 12 B.R. 34, 7 B.C.D. 1025 (Bkrtcy.E.D.Mo.1982). *But see, Shamrock Golf Co. v. Richcraft, Inc.,* 680 F.2d 645 (9th Cir.1982) (holding date check received as date of transfer). However, for purposes of the exceptions to the preference rule set forth in § 547(c)(1) and (2), the legislative history makes it clear that "payment is considered to be made when the check is delivered" because the check is considered the equivalent of a cash payment unless it is dishonored. This perspective is appropriate for purposes of § 547(c)(4) as well, despite the fact that the legislative history does not specifically deal with the concept's application to that subsection. Subsection 547(c)(4) was intended to encourage creditors to continue doing business with troubled businesses. Dating a transfer from the date of receipt of a check by the creditor best implements this purpose for it does not penalize a creditor who advances new value (thus keeping the debtor's business viable) in reliance on payment of a prior debt by check. *In re Gold Coast Seed,* 30 B.R. at 553; *see also In re Thomas W. Garland, Inc.,* 19 B.R. at 928.

■ The final issue raised by this appeal is whether the bankruptcy judge improperly failed to consider as new value for purposes of § 547(c)(4) the value of the services of a technical assistant provided by De-

fendant to the debtor during the preference period. Findings of the Bankruptcy Court in core matters like the instant one must be assessed under the clearly erroneous standard set forth in Bankruptcy Rule 8013. *In re Shop-N-Go of Maine, Inc.*, 38 B.R. 731 (D.Me.1984).[2] Having carefully reviewed the record, the Court does not find the Bankruptcy Court's ruling to be clearly erroneous.

■ There is no dispute here that under § 547(c)(4) services may be considered new value to be netted against the debtor's preferential transfers. *See* 11 U.S.C. § 547(a)(2). The testimony of Defendant's technical demonstrator leather finisher, Mr. Gagnon, discloses that he consistently worked at the debtor's plant, that debtor "sort of relied upon" his expertise and that he was paid by Defendant. Nowhere is there included a statement of the value of the services; nor is there any indication in the record that the value of the services of Mr. Gagnon was distinct from the value of the goods, the use of which he facilitated, and which the court allowed to be set off against the otherwise preferential transfers. Thus, the record supports the bankruptcy judge's finding that there was no evidence that Gagnon's services were anything more than an incentive gratuity offered to facilitate the sales of its products. This finding is further supported by the pleadings. In its fifth affirmative defense, Defendant characterizes the new value given under § 547(c)(4) as the value of "shipments" worth $151,811.14.

The record also supports the bankruptcy judge's finding that there is no evidence to suggest that the debtor contracted for the services. Although the record shows that initially someone at the debtor's plant requested technical assistance with the products and that the assistance was continued from that time forth, there is no evidence of an agreement by debtor to pay separately for the services or of any consideration that might have been provided by the debt-

or for them. The case cited by Defendant in support of its argument, *Bernstein v. Home Life Insurance Co.*, 25 B.R. 321 (S.D.N.Y.1982), stands for the proposition that services may be considered new value, but the services in that case were quantified and part of a "completely performed contract."

The Court, therefore, cannot find clearly erroneous the bankruptcy judge's determination that the services provided by Defendant are not to be considered new value distinct from the goods provided. Under the appropriate standard of review, it is not within the province of this Court to hold a new hearing, as Defendant suggests, to determine the value of the services.

In summary, the Court finds that the judicially created net result rule has no vitality in light of § 547(c)(4) of the Bankruptcy Code. The bankruptcy judge properly determined the date of transfer by check for purposes of § 547(c)(4) and properly applied that section to the exchanges between the parties during the instant preference period. Finally, there is no error in the Court's determination that the services provided by Defendant's technical consultant are not new value for purposes of § 547(c)(4).

Accordingly, it is hereby ORDERED that the Defendant's appeal is DENIED; the Trustee's cross appeal is also DENIED. The judgment of the Bankruptcy Court is AFFIRMED.

So ORDERED.

2. Although the parties contended at argument that this was a related matter, the Court must disagree. Rule 41(d)(3)(A) expressly states that

related proceedings do not include proceedings to set aside preferences and fraudulent conveyances.