In re MEREDITH MANOR, INC., et al., Debtors.

WHEELING NATIONAL BANK, Appellant,

v.

Ronald W. MEREDITH, et al., Appellees.

Civ. A. No. A:89–0264.

United States District Court, S.D. West Virginia, Parkersburg Division.

June 19, 1989.

Jeremy C. McCamic, Jeffrey W. McCamic, McCamic & McCamic, Wheeling, W. Va., for Wheeling Nat. Bank.

William V. Crichton, V, Parkersburg, W. Va., trustee.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Debtors in the bankruptcy proceeding underlying this action filed petitions under Chapter 7 of the Bankruptcy Code on November 21, 1985. In this action, the trustee seeks to recover, as avoidable preferences, payments made by the Debtor to the Appellant, Wheeling National Bank. The Bank argued that a majority of the payments were not recoverable by the trustee because the payments fell within an exception to the preference rule provided in 11 U.S.C. § 547(c)(4). The bankruptcy court agreed that certain payments were protected by § 547(c)(4). The parties do not challenge this ruling. The issue raised on appeal is whether the Court properly applied the exclusion formula provided in § 547(c)(4).[1]

The bankruptcy court found the trustee entitled to recover $84,151.53. In doing so, the Court interpreted § 547(c)(4) to require each debtor payment "be netted against the value of advances made to the debtor after [the payment] *but before the next [payment]*." (Memorandum Order at 8, March 9, 1989, Pearson, J.) (Emphasis in original). Under the court's approach, each payment by the debtor is carried forward for the purpose of offsetting bank advancements until the next payment. If no advancements are made in the interim, the bank is afforded no protection and the trustee is entitled to recover the full payment. Similarly, *if payments exceed advancements for a given period, the bank is protected only to the extent of its advancements. Any excess in the payment account is lost upon subsequent payment. In the event advancements exceed payments, the bank's protection is limited to the payment amount.*[2]

The accounting method applied by the bankruptcy court was approved in *Leathers v. Prime Leathers Finishing Co.*, 40 B.R. 248 (D.Me.1984). In *Leathers*, the court held that the judicially created "net result rule" has "no vitality under the bankruptcy code which deals specifically with the question of new value given during the preference period...." *Id.* at 251. In commenting on the bankruptcy court's method of computation, the court stated "that the proper mode of analysis is that after each preferential payment, an assess-

1. Section 547(c)(4) provides:

   "(c) The trustee may not avoid under this section a transfer—

   (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

   (A) not secured by an otherwise unavoidable security interest; and

   (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;"

2. Transactions within the preference period as defined by § 547(b)(4) are as follows:

| DATE | ADVANCES | PAYMENTS |
|---|---|---|
| 9/11/85 | | $30,444.82 |
| 9/12/85 | | 75,000.00 |
| 10/04/85 | 10,000.00 | |
| 10/06/85 | 10,348.08 | |
| 10/11/85 | 1,500.00 | |
| 10/18/85 | 6,000.00 | 9,000.00 |
| 10/21/85 | 11,000.00 | |
| 10/25/85 | 2,000.00 | |
| 10/28/85 | | 6,000.00 |
| 10/29/85 | 4,600.00 | |
| 10/30/85 | 4,699.00 | |
| 11/05/85 | 18,461.80 | |
| 11/07/85 | 11,664.05 | |
| 11/09/85 | 1,965.00 | |
| 11/13/85 | 1,404.89 | |
| 11/14/85 | 5,651.51 | |
| 11/15/85 | | 1,214.79 |
| 11/18/85 | 660.00 | |

ment must be made as to how much property the creditor restored to the debtor before the next preferential payment was made." *Id.*

The Appellant argues that the *Leathers* method of computation is erroneous and urges the Court to apply the method espoused in *Garland v. Union Electric Co.,* 19 B.R. 920 (Bankr.E.D.Mo.1982). In *Garland* the court expressly rejected the method subsequently adopted in *Leathers.*

"... Garland urges that section 547(c)(4) be interpreted to allow set off only of new value provided immediately after one preferential transfer and prior to the next preferential transfer. I hereby reject Garland's suggested interpretation of section 547(c)(4). Such an interpretation places limitations on the creditor's right to set off not found in the statutory language. In addition, this suggested interpretation, if applied, would be tantamount to treating the preferential transfer and subsequent unsecured advances as a substantially contemporaneous exchange, coverage of which is already provided for in section 547(c)(1)."

*Id.* at 926.

Like *Leathers,* the court rejected the argument that the "net result rule" was incorporated into § 547(c)(4). The court, however, did not do away with the rule totally.

"An acknowledgement of the new result rule in the legislative history serves to emphasize that the drafters of the code were attempting to retain at least the principles behind the rule in section 547(c)(4) and to recognize the realities of ordinary business transactions. Section 547(c)(4) serves the general goals of the preference provisions of the code. A creditor is encouraged to cooperate with a financially troubled debtor and is protected to the extent that he extends new credit in reliance on prior payments. Unusual action by either a creditor or a debtor is discouraged.

Whatever the net result rule may have been under the prior bankruptcy act, Congress has indicated that, under the Bankruptcy Code, the rule is to be applied according to the formula set forth in section 547(c)(4). A creditor who has received a preferential transfer may retain that transfer to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor." *Id.*

The difference between the *Garland* and *Leathers* methods is that *Leathers* limits the preferential payment carry forward while *Garland* does not. In *Garland,* the creditor is entitled to a dollar-for-dollar offset up to the date of bankruptcy, regardless of intervening payments. *Leathers,* on the other hand, places extreme emphasis on each individual preferential payment and affords dollar-for-dollar protection only for advancements made between payments. Unlike the net result rule, both methods require the preferential payment precede the offsetting advancement for the creditor to be entitled to a set off.

In the present case, Appellant argues under *Garland* that it is entitled to carry forward the initial $30,444.82 payment until it is exhausted and then carry forward the $75,000.00 payment against subsequent advancements, and so on. The *Garland* method reduces the Defendant's liability from $84,151.85 as the bankruptcy court found, to $31,705.28.

After having carefully considered both methods the Court concludes that the *Garland* method serves the legislative goal of encouraging creditors to cooperate with financially troubled debtors. The *Garland* approach does not overemphasize each individual transaction and incorporates the business reality that a bank generally does not extend credit based upon a single payment, but rather on the debtor's recent payment history as a whole. Further, unlike *Leathers,* the *Garland* approach does not penalize a creditor who permits a debtor to make payments in small increments.

The Court, therefore, vacates the portion of the bankruptcy court's order which holds the trustee entitled to $84,151.53. The case is remanded for application of the *Garland* method. It is so ORDERED.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.