**In re TOWER METAL ALLOY COMPANY, Debtor in Possession.**

**Ruth A. SLONE–STIVER, Trustee in Bankruptcy, Plaintiff,**

**v.**

**CLEMENS OIL COMPANY, Defendant.**

**Bankruptcy No. 3–91–02828. Adv. No. 94–245.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Feb. 14, 1996.

Ruth A. Slone–Stiver, Trustee in Bankruptcy, Dayton, Ohio.

Peter J. Donahue, Dayton, Ohio, for Defendant.

## DECISION ON ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WILLIAM A. CLARK, Chief Judge.

This matter is before the court upon defendant's "Motion for Partial Summary Judgment" (Doc. # 8). The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

### PROCEDURAL POSTURE AND FACTS

On December 29, 1994, plaintiff Ruth A. Slone–Stiver—trustee for the bankruptcy estate of Tower Metal Alloy ("debtor")—filed an adversary proceeding against defendant Clemens Oil Company. The complaint alleges that the defendant received $7,483.45 from the debtor on April 3, 1991, and $4,214.41 on April 12, 1991, and that both transfers are voidable by the trustee as preferential transfers under § 547 of the Bankruptcy Code.[1]

In its amended answer, the defendant does not deny receiving the transfers from the debtor but does deny that such transfers were preferential under the Bankruptcy Code. In addition, the defendant sets forth four affirmative defenses. Of importance to the instant decision is the defendant's defense that, because it provided new value to the debtor after the alleged preferential transfers were made to the defendant, a significant portion of the alleged preferential

transfers are excepted from avoidance by virtue of § 547(c)(4) of the Bankruptcy Code.

Currently before the court is the defendant's "Motion for Partial Summary Judgment" whereby the defendant requests the court to reduce the alleged preferential transfers from $11,697.86 by the amount of "new value" extended ($8,266.90) to a new alleged preferential amount of $3,430.84. Accompanying the defendant's motion is the "Affidavit of Ed Clemens" (Doc. # 9), defendant's former president, who states that the following information from Exhibit "B" of his affidavit is an ongoing schedule of the net balances in the Tower account and accurately reflects the value of products shipped to Tower on or after April 3, 1991, at $8,266.90, leaving an account of $3,430.84" (Doc. # 9):

### SCHEDULE OF PAYMENTS AND SHIPMENTS OF NEW VALUE GOODS

| DATE | PAYMENT | S/NJ | NET PREFERENCE |
| --- | --- | --- | --- |
| 4/3 | 7483.45 | | 7,483.43 |
| | | 688.11 | 6,795.34 |
| | | 304.22 | 6,491.12 |
| 4/12 | 4214.41 | | 10,705.53 |
| 4/15 | | 278.21 | 10,427.32 |
| 4/15 | | 153.45 | 10,273.87 |
| 4/19 | | 918.56 | 9,355.31 |
| 4/22 | | 287.81 | 9,067.50 |
| 4/25 | | 105.00 | 8,962.50 |
| 4/29 | | 320.11 | 8,642.39 |
| 5/6 | | 369.24 | 8,273.15 |
| 5/1 | | 89.00 | 8,184.15 |
| 5/7 | | 624.25 | 7,559.90 |
| 5/6 | | 748.25 | 6,811.65 |
| 5/14 | | 427.27 | 6,384.38 |
| 5/14 | | 346.79 | 6,037.59 |
| 5/14 | | 1,022.25 | 5,015.34 |
| 5/22 | | 257.04 | 4,758.36 |
| 5/22 | | 812.70 | 3,945.60 |
| 5/30 | | 291.89 | 3,653.71 |
| 6/5 | | 222.87 | 3,430.84 |

*Id.*, Exhibit B.

### CONCLUSIONS OF LAW

■ Fed.R.Civ.P. 56(c) reads, in part, that:

[1]  (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made—
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between 90 days and one year before the date of the filing of the petition, if such credi-

tor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if—
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Section 547(c)(4) of the Bankruptcy Code provides that the trustee may not avoid under § 547(b) a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c).

■■■ "This exception removes the unfairness of allowing the trustee to void all transfers made by the debtor to a creditor during the preference period without giving the creditor any corresponding credits for subsequent advances of new value to the debtor's estate." *Colliers on Bankruptcy*, para. 547.12 (15th ed. 1995). Prior to the enactment of the Bankruptcy Reform Act of 1978, courts frequently utilized the so-called "net result rule" which netted all transactions between the debtor and the defendant during the entire ninety-day preference period "irrespective of whether the value furnished by the creditor to the debtor [was] advanced either before or after the transfer from the debtor to the creditor." *Waldschmidt v. Ranier (In re Fulghum Construction Corp.)*, 706 F.2d 171, 173 (6th Cir.1983). "The net result rule is a judicially created doctrine, predicated upon principles of equity, which evolved shortly after the enactment of the Bankruptcy Act of 1898 to presumably rectify what was judicially perceived to be inequities in bankruptcy law." *Id.* The Bankruptcy Reform Act of 1978 did not, however, completely codify the net result rule. In-

stead, "Congressional metamorphosis ... transformed the judicially created net result rule into what may be characterized as a subsequent advance rule and ... codified this augmented version into § 547(c)(4)...." *Id.* at 174. "[T]he subsequent advance rule of § 547(c)(4) is more circumscribed in application [than the 'net result rule'] and forecloses avoidance of the transfer by the trustee only if the creditor provides additional value *after* the transfer from the debtor to the creditor." *Id.* at 173.

In the instant case, for the purposes of the defendant's motion regarding § 547(c)(4) of the Bankruptcy Code, the court finds that there is no genuine issue as to any material fact. In determining whether the defendant is entitled to a partial summary judgment as a matter of law, the court must examine one of the computational problems inherent in applying the subsequent advance rule. As stated by the defendant,[2] "[t]he only question is whether the excess of shipments after the payment of § 4,214.41 on April 12, 1991, can be allocated to the prior payment of $7,483.45 on April 3, 1995" (Doc. # 8).

Under the minority approach set forth in *Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248, 251 (D. Maine 1984) (emphasis supplied), "the proper mode of analysis is that after each preferential payment, an assessment must be made as to how much property the creditor restored to the debtor *before the next preferential payment was made.*"

Basically, under the *Leathers* approach, the creditor is protected only to the extent that it gives "new value" subsequent to each preference but before the next payment is received from the debtor. This approach essentially divides the 90-day preference period into a series of isolated transactions in which the "new value given" by the creditor is netted only against the immediately preceding preference. *Crichton v. Wheeling Nat'l Bank (In re Meredith Manor, Inc.)*, 902 F.2d 257, 258–259 (4th Cir.1990).

---

**2.** The plaintiff has not responded to the defendant's motion for partial summary judgment, and, therefore, the court does not know whether she opposes or agrees with the defendant's position.

The *Leathers* approach, however, "has been criticized by the majority of courts which have considered this issue for its arbitrary refusal to permit set-off against earlier transfers." *Schilling v. Jackson Oil Co. (In re Transport Associates, Inc.)*, 171 B.R. 232, 238 (Bankr.W.D.Ky.1994). This court also rejects the *Leathers* approach. Nothing in the language of § 547(c)(4) requires the *Leathers* result, *Mosier v. Ever–Fresh Food Company (In re IRFM, Inc.)*, 52 F.3d 228, 233 (9th Cir.1995), and "[s]uch a rule would encourage creditors to limit new shipments strictly to the amount of the prior invoice paid, regardless of the debtor's need for the new value infusion. Such an artificial distinction would interfere with the ordinary commercial flow of goods and services to troubled debtors." *The Successor Committee of Creditors Holding Unsecured Claims v. Bergen Brunswig Drug Co. (In re Ladera Heights Community Hosp., Inc.)*, 152 B.R. 964, 969 (Bankr.C.D.Cal.1993). Instead, this court will follow the variation of the net result rule known as the *Garland* [3] rule.

> This method looks at the 90–day preference period and calculates the difference between the total preferences and the total advances, provided that each advance is used to offset only prior (although not necessarily immediately prior) preferences. Unlike *Leathers, Garland* permits preferences to be carried forward until exhausted by subsequent advances. In other words, the creditor is allowed to apply the giving of "new value" against the immediately preceding preference as well as against all prior preferences....
>
> ... [T]he *Garland* rule, in addition to better serving the legislative goal of encouraging creditor assistance to financially troubled debtors, also reflects a more realistic view of commercial practices. An open credit line is a fluid relationship which normally does not emphasize individual loan repayments. Instead, it is the debtors' entire financial picture and repayment history, not the latest payment, which are the bases for maintaining the

line of credit. *In re Meredith Manor, Inc., supra,* 902 F.2d at 259.

For the foregoing reasons the court finds that the new value extended by the defendant after debtor's payment of April 12, 1991, may be offset not only against the payment of April 12, 1991, but also against debtor's payment of April 3, 1991. In other words, the calculations set forth in defendant's Exhibit "B" are correct. The court also finds no evidence has been presented that the new value was secured by an otherwise unavoidable security interest, nor that the debtor made an otherwise unavoidable transfer to the defendant on account of the new value. Therefore, $8,266.90 of the transfers made to the defendant by the debtor may not be avoided by the trustee under § 547(b).

It is hereby ORDERED that defendant's Motion for Partial Summary Judgment is GRANTED, and the alleged preference to the defendant of $11,697.86 is reduced by the new value ($8,266.90) extended by the defendant to an alleged preferential amount of $3,430.84.

With respect to the other issues in this adversary proceeding, which involve the remaining alleged preferential amounts, it is hereby ORDERED that a Pretrial Conference is set for ***Thursday, March 7, 1996, at 11:00 A.M.***

---

**3.** *Thomas W. Garland, Inc. v. Union Electric Co. (In re Thomas W. Garland, Inc.)*, 19 B.R. 920 (Bankr.E.D.Mo.1982).