In re JANNEL INDUSTRIES,
INC., Debtor.

Mark G. DeGiacomo, as he is Chapter
7 Trustee of Jannel Industries,
Inc., Plaintiff,

v.

Draper Knitting Co., Inc., Defendant.

Bankruptcy No. 97–19858–CJK.
Adversary No. 99–1178.

United States Bankruptcy Court,
D. Massachusetts.

March 7, 2000.

Stephen F. Gordon, Boston, MA, for Draper Knitting Co., Inc.

Thomas S. Vangel, Boston, MA, for Trustee.

## MEMORANDUM OF DECISION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

CAROL J. KENNER, Bankruptcy Judge.

By his complaint in this adversary proceeding, Mark DeGiacomo, as Chapter 7 Trustee of Jannel Industries, Inc., seeks under 11 U.S.C. § 547(b) to avoid and recover fifty-nine allegedly preferential payments, totaling $121,750, that Debtor Jannel Industries made to Defendant

Draper Knitting Company within ninety days before Jannel's bankruptcy filing. In response, Draper contends that the payments cannot be avoided because (1) to a large extent, they were contemporaneous exchanges for new value within the meaning of § 547(c)(1); and (2) each payment is protected by the "new value" defense, § 547(c)(4), because after each payment was made, Draper advanced new value to the Debtor in excess of the amount of the payment.

The adversary proceeding is now before the Court on the parties' cross-motions for summary judgment. Draper seeks summary judgment on the basis of its affirmative defenses. In response, the Trustee concedes that all but $21,648.19 of the challenged payments are indeed protected by the new value defense, but he continues to maintain that the remaining $21,648.19 is not protected by either § 547(c)(1) or § 547(c)(4). To that extent, he opposes Draper's motion for summary judgment and has filed a cross-motion for summary judgment. Draper opposes the cross-motion. For the reasons set forth below, the Court holds that there are no genuine issues of material fact and that, on the uncontroverted facts, Draper is entitled to judgment as a matter of law.

### Facts

The material facts in evidence are relatively few and, except as indicated below, uncontroverted. The Debtor, Jannel Industries, Inc., commenced this bankruptcy case by filing a petition for relief under Chapter 11 of the Bankruptcy Code on October 16, 1997. As of July 18, 1997, the ninetieth day before the bankruptcy filing, the Debtor owed Draper approximately $45,000. Between July 18 and October 16, 1997, in 54 separate deliveries, Draper delivered $147,871.54 worth of goods to the Debtor. Immediately upon receipt of each delivery, the Debtor tendered one or more checks to Draper. The amounts of these checks did not exactly correspond to the amount that Draper billed the Debtor for the goods in the corresponding shipment:

in most instances, the payment exceeded the value of the goods provided, but the value of the goods sometimes exceeded the amount of the payment. Most of the checks so tendered were honored in due course, resulting in total payments during this period of $121,750. However, the Debtor's bank did not honor the checks tendered after September 28, 1997, resulting in the Debtor's receipt of twelve deliveries, of goods worth a total of $29,999.84, for which Draper received no payment. The deliveries and payments during this period are summarized in the table attached as Exhibit A to this memorandum.

Draper has adduced evidence that, in late 1996, the Debtor and Draper agreed that Draper would thenceforth provide goods to the Debtor on a cash-on-delivery (C.O.D.) basis, meaning that when the Debtor picked up goods from Draper's shipping dock, the Debtor would give Draper a check for the approximate amount of the goods provided on that day. Draper has also produced evidence that the goods it delivered to the Debtor between July 18 and October 16, 1997, were delivered on this C.O.D. basis. However, in practice, the amounts of the payments sometimes varied substantially from the value of goods in the corresponding delivery: seven payments exceeded the value of goods supplied by over $1,000—one by over $6,000—and (excluding the deliveries for which checks were dishonored) three deliveries exceeded payments by $1,800 or more. Other evidence shows that, in its internal accounting, Draper did not apply the payments to the goods delivered upon receipt of the payment but to invoices for earlier deliveries. Therefore, there is a genuine issue of fact as to whether Draper intended the payments to be payments for the goods tendered upon receipt of the payment. However, it is uncontroverted that the Debtor and Draper both understood that they were exchanging payments for new goods, and that, on those occasions where the Debtor's check was ultimately

honored, the exchanges were substantially contemporaneous.

### Draper's Motion for Summary Judgment

A party is entitled to summary judgment only upon a showing that there is no genuine issue of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). Draper seeks summary judgment on the strength of its affirmative defenses, as to which it would bear the burden of proof at trial. 11 U.S.C. § 547(g) ("the creditor ... against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section"). Where the burden of proof at trial would fall on the party seeking summary judgment, that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each essential element of cause of action. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under F.R.Civ.P. 50(a). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the motion is properly supported, the burden shifts to the adverse party to submit evidence demonstrating the existence of a genuine issue as to at least one material fact. If the adverse party does not so respond, "summary judgment, if appropriate, shall be entered against the adverse party." F.R.Civ.P. 56(e); *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir.1989).

####     a.    Contemporaneous    Exchange: § 547(c)(1)

■ Draper first contends that many of the transfers at issue cannot be avoided because they qualify, at least in part, for protection under the defense set forth at § 547(c)(1), known as the "contemporane-

ous exchange for new value" defense. Section 547(c)(1) states:

> The trustee may not avoid under this section a transfer—
>
> (1) to the extent that such transfer was—
>
>> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>>
>> (B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1). For purposes of this section, "new value" means "money or money's worth in goods, services, or new credit." 11 U.S.C. § 547(a)(2) (defining "new value"). Draper contends that each payment at issue qualifies for this exception to the extent of value given in exchange for the payment.[1]

The Trustee argues that Draper is not entitled to summary judgment on this defense because there is a genuine issue of material fact as to whether Draper intended for the payments to be contemporaneous exchanges for new value. The Trustee takes the position that if, as some evidence indicates, Draper's intent was to apply the Debtor's payments not to the goods received in the contemporaneous exchange but to invoices for goods delivered earlier, then the Draper lacked the intent required by § 547(c)(1)(A). However, the Trustee does not dispute that each payment was part of a contemporaneous exchange and that the goods supplied by Draper constitute new value within the meaning of § 547 to the extent of the amounts specified in Exhibit A.

■ The applicability of the "contemporaneous exchange" defense turns on whether the exchanges were made with the intent required by § 547(c)(1)(A).[2] Part (A) of the "contemporaneous ex-

---

1. Draper concedes that this defense does not apply to the portion of any payment that exceeded the extent of new value supplied in the contemporaneous exchange.

2. The Court concludes that the other requirements of this defense have been satisfied, and the Trustee does not contend otherwise.

change" defense limits the application of the defense to transfers "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor." 11 U.S.C. § 547(c)(1)(A). Under the Trustee's proposed interpretation, Part A requires not only intent to exchange payment for new value; it also requires intent for the payment to apply to contemporaneously exchanged new value. But this interpretation would render the "contemporaneous exchange for new value" defense superfluous: if a payment were for new value, then the trustee would be unable to satisfy § 547(b)(2)—requiring a transfer "for or on account of an *antecedent* debt owed by the debtor *before* such transfer was made," 11 U.S.C. § 547(b)(2)—and there would be no need for recourse to this or any other affirmative defense. In other words, the "contemporaneous exchange" defense does not even come into play unless the payment is for *antecedent* debt. Therefore, I reject the Trustee's interpretation and hold that the statute does not require intent to apply the payment to the new value. Rather, it requires only intent to exchange payment (on old debt) for new value. The fact that the parties intended to apply the payment to an antecedent debt does not remove the payment from the protection of this defense.

The evidence is uncontroverted that the Debtor and Draper intended the transfers at issue to be contemporaneous exchanges of payment for new value. Therefore, the Court concludes that Draper is entitled to judgment as a matter of law on the contemporaneous exchange defense. The payments are immune from avoidance to the extent of new value given in contemporaneous exchange, a total of $100,260.18.

### b. *New Value: § 547(c)(4)*

■ Draper's second defense is that, insofar as the payments are not protected by the contemporaneous exchange defense, they are nonetheless protected by § 547(c)(4), the "subsequent new value" defense, because, after each payment, Draper supplied new value to the Debtor in an amount exceeding the payment. I understand Draper to be using this defense in two ways. Draper first is arguing that the transfers not protected by the "contemporaneous exchange" exception, aggregating $21,489.82, are protected under the subsequent new value exception by virtue of the $29,999.84 of new value that Draper supplied after the last preferential transfer and for which Draper received no payment. In the alternative, Draper is arguing that, if the contemporaneous exchange defense is ruled to be completely unavailable, then *all* the transfers are protected by the subsequent new value exception.

The Trustee concedes that, under the subsequent new value defense, Draper can protect most of the disputed payments (even if they are not otherwise protected by the contemporaneous exchange defense), but he maintains that when the new value defense is properly applied, there remains $21,648.19 in recoverable payments. The Trustee arrives at this figure by employing a calculus, which he contends is required by § 547(c)(4), under which an extension of new value can be credited only against the immediately preceding preferential transfer; if the new value is not entirely used up by that transfer, the balance cannot be carried back to an earlier transfer. Draper, on the other hand, contends that new value can be applied to any preceding payment, not only the payment immediately preceding the extension of new value. The Trustee concedes that under Draper's formula, all the contested payments would be fully protected.

There are no genuine issues of material fact as to this defense. The only issue presented is one of law: whether § 547(c)(4)[3] permits an extension of new

---

3. Section 547(c)(4) states:

The trustee may not avoid under this sec-

value to be credited only against the immediately preceding preferential transfer, as the Trustee contends, or whether the new value can be credited against any preceding preferential transfer. In relevant part, the statute itself specifies that a transfer may not be avoided "to the extent that, *after such transfer,* such creditor gave new value to or for the benefit of the debtor." 11 U.S.C. § 547(c)(4) (emphasis added). The language does not state, "after such transfer and before the next," as the Trustee's position would require. Rather, it states only "after such transfer" and thereby appears to permit a creditor to take advantage of any new value given after a challenged transfer (provided it meets the other requirements of this defense).

The only authority that the Trustee cites for his interpretation is *Leathers v. Prime Leather Finishes Co.,* 40 B.R. 248 (D.Maine 1984). In *Leathers,* the court stated that, for purposes of § 547(c)(4), "the proper mode of analysis is that after each preferential payment, an assessment must be made as to how much property the creditor restored to the debtor before the next preferential payment was made." *Leathers v. Prime Leather Finishes Co.,* 40 B.R. at 251. However, the *Leathers* court did not explain why it took this position. Moreover, the court supplied little background about the issue with which it was dealing (it plainly was not the principal issue on appeal),[4] and the background supplied is confusing, so I am not confident that *Leathers* was dealing with the same

issue as is presented here. Therefore, I do not read *Leathers* as strong support for the Trustee's position.

The majority position is that "a creditor is permitted to carry forward preferences until they are exhausted by subsequent advances of new value." *Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.),* 52 F.3d 228, 232 (9th Cir.1995); see also *In re Meredith Manor, Inc.,* 902 F.2d 257, 259 (4th Cir.1990) (rejecting *Leathers* approach and permitting references to be carried forward until exhausted by subsequent advances. "In other words, the creditor is allowed to apply the giving of 'new value' against the immediately preceding preference as well as against all prior preferences."); *In re PNP Holdings Corp.,* 167 B.R. 619, 627 (Bankr. W.D.Wash.1994) ("The application of the new value defense is not limited to the preference immediately preceding the provision of new value."); *In re Thomas W. Garland, Inc.,* 19 B.R. 920 (Bankr.E.D.Mo. 1982) (rejecting interpretation that would permit set off only of new value provided immediately after one preferential transfer and prior to the next preferential transfer).

These decisions reject the *Leathers* approach for several reasons. First, it places limitations on the creditor's right of setoff not found in the statutory language. *In re Thomas W. Garland, Inc.,* 19 B.R. at 926; *In re PNP Holdings Corp.,* 167 B.R. at 627 ("There is nothing in the language of Section 547(c)(4) that limits the applica-

---

tion a transfer—
    (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
      (A) not secured by an otherwise unavoidable security interest; and
      (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

4. The Court's entire discussion of this issue is as follows:
    On cross appeal ... the Trustee also contends that the Court erred by permitting the

deduction of new value before subsequent preferential transfers....
    The Court also finds the Trustee's argument that the bankruptcy judge misapplied § 547(c)(4) to be without merit. The Court agrees with the Trustee that the proper mode of analysis is that after each preferential payment, an assessment must be made as to how much property the creditor restored to the debtor before the next preferential payment was made.
*Leathers v. Prime Leather Finishes Co.,* 40 B.R. at 250, 251.

tion of new value to the immediately preceding transfer."); *Mosier v. Ever–Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d at 232 ("nothing in the language of section 547(c)(4) requires this result. The statute states only that after a preferential transfer, new value must be given."). Second, the Trustee's proposed interpretation "would be tantamount to treating the preferential transfer and subsequent unsecured advances as a substantially contemporaneous exchange, coverage of which is already provided for in section 547(c)(1)." *In re Thomas W. Garland, Inc.*, 19 B.R. at 926. Third, the policy of permitting new value to be applied to any prior preferential transfer "better serv[es] the legislative goal of encouraging creditor assistance to financially troubled debtors." *In re Meredith Manor, Inc.*, 902 F.2d at 259. "A creditor will be more likely to continue to advance new value to a debtor if all these subsequent advances may be used to offset a prior preference. If a second advance of new value carries no benefit, the creditor will be unlikely to make it." *Mosier v. Ever–Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d at 232. And fourth, the approach of permitting new value to be applied to all prior transfers "recognizes the fluid nature of ongoing commercial activity where a creditor looks to a debtor's entire repayment history, instead of one isolated transaction, to decide whether to advance new credit." *Id.* For all these reasons, this Court agrees with the majority position and holds that, under § 547(c)(4), new value may be applied to any prior preferential transfer.

This precludes any recovery by the Trustee for the preferential transfers. By virtue of the contemporaneous exchange defense, the payments at issue are unavoidable to the extent of $100,260.18, leaving only payments totaling $21,489.82 that are not protected by that defense. However, after those payments were made, Draper made additional unsecured advances of new value totaling $29,999.84, for which it received no payment. Under § 547(c)(4), these advances are more than sufficient to setoff the payments that do not qualify for protection under § 547(c)(1). Therefore, the disputed payments are unavoidable in their entirety. And, as the last column in the attached table demonstrates, the Court would reach the same result even if none of the payments were protected by the contemporaneous exchange defense and Draper were relying solely on the new value defense. Accordingly, Draper is entitled to judgment as a matter of law. The Court need not separately address the Plaintiff's motion for summary judgment.

### ORDER

For the reasons set forth above, the Court hereby ALLOWS the Motion of Draper Knitting Co., Inc., for Summary Judgment and DENIES the Trustee's Cross–Motion for Summary Judgment. A separate judgment will enter dismissing the complaint.

## APPENDIX

| Date | Payment | New Value | Extent Protected under § 547(c)(1) (Contemp.Exch.) | Balance of Preferences Net of Subsequent New Value |
|---|---|---|---|---|
| 7/18/97 | 1,500.00 | 1,260.26 | 1,260.26 | 239.74 |
| 7/21/97 | 5,000.00 | 3,381.84 | 3,381.84 | 1,857.90 |
| 7/22/97 | 5,000.00 | 3,900.95 | 3,900.95 | 2,956.95 |
| 7/23/97 | 3,250.00 | 2,012.09 | 2,012.09 | 4,194.86 |
| 7/24/97 | 4,500.00 | 3,863.13 | 3,863.13 | 4,831.73 |
| 7/28/97 | 5,000.00 | 3,998.25 | 3,998.25 | 5,833.48 |
| 7/29/97 | 2,500.00 | 2,377.85 | 2,377.85 | 5,955.63 |
| 7/30/97 | 2,500.00 | 1,887.04 | 1,887.04 | 6,568.59 |
| 7/31/97 | 2,500.00 | 1,986.47 | 1,986.47 | 7,082.12 |

| Date | Payment | New Value | Extent Protected under § 547(c)(1) (Contemp.Exch.) | Balance of Preferences Net of Subsequent New Value |
|---|---|---|---|---|
| 8/1/97 | 5,000.00 | 3,978.42 | 3,978.42 | 8,103.70 |
| 8/4/97 | 10,000.00 | 3,935.11 | 3,935.11 | 14,168.59 |
| 8/5/97 | 2,000.00 | 1,952.00 | 1,952.00 | 14,216.59 |
| 8/6/97 | 4,000.00 | 3,918.64 | 3,918.64 | 14,297.95 |
| 8/7/97 | 2,000.00 | 1,926.99 | 1,926.99 | 14,370.96 |
| 8/8/97 | 2,000.00 | 1,978.23 | 1,978.23 | 14,392.73 |
| 8/11/97 | 2,000.00 | 1,915.71 | 1,915.71 | 14,477.02 |
| 8/12/97 | 4,000.00 | 3,821.35 | 3,821.35 | 14,655.67 |
| 8/13/97 | 2,000.00 | 1,863.25 | 1,863.25 | 14,792.42 |
| 8/14/97 | 2,000.00 | 1,915.40 | 1,915.40 | 14,877.02 |
| 8/15/97 | 2,000.00 | 1,904.42 | 1,904.42 | 14,972.60 |
| 8/18/97 | 2,000.00 | 1,835.80 | 1,835.80 | 15,136.80 |
| 8/19/97 | 2,000.00 | 1,920.59 | 1,920.59 | 15,216.21 |
| 8/20/97 | 2,000.00 | 3,843.61 | 2,000.00 | 13,372.60 |
| 8/21/97 | 2,000.00 | 1,968.17 | 1,968.17 | 13,404.43 |
| 8/26/97 | 4,000.00 | 3,839.04 | 3,839.04 | 13,565.39 |
| 8/27/97 | 4,000.00 | 3,965.31 | 3,965.31 | 13,600.08 . |
| 8/28/97 | 1,500.00 | 3,542.27 | 1,500.00 | 11,557.81 |
| 9/3/97 | 2,000.00 | 1,988.60 | 1,988.60 | 11,569.21 |
| 9/4/97 | 2,000.00 | 2,008.73 | 2,000.00 | 11,560.48 |
| 9/5/97 | 4,000.00 | 4,004.35 | 4,000.00 | 11,556.13 |
| 9/8/97 | 2,000.00 | 2,033.13 | 2,000.00 | 11,523.00 |
| 9/9/97 | 2,000.00 | 2,056.01 | 2,000.00 | 11,466.99 |
| 9/10/97 | 2,000.00 | 2,054.18 | 2,000.00 | 11,412.81 |
| 9/11/97 | | 3,858.56 | | 7,554.25 |
| 9/12/97 | | 3,895.77 | | 3,658.48 |
| 9/17/97 | 4,000.00 | 1,583.87 | 1,583.87 | 6,074.61 |
| 9/18/97 | 2,000.00 | 3,964.70 | 2,000.00 | 4,109.91 |
| 9/22/97 | 4,000.00 | 3,863.44 | 3,863.44 | 4,246.47 |
| 9/23/97 | 2,000.00 | 3,926.88 | 2,000.00 | 2,319.59 |
| 9/24/97 | | 1,923.33 | | 396.26 |
| 9/25/97 | 4,000.00 | 2,008.43 | 2,008.43 | 2,387.83 |
| 9/26/97 | 5,500.00 | 4,009.53 | 4,009.53 | 3,878.30 |
| 9/29/30 | | 1,924.25 | | 1,954.05 |
| 9/30/97 | | 3,889.97 | | (1,935.92) |
| 10/1/97 | | 1,897.41 | | (3,833.33) |
| 10/2/97 | | 4,044.30 | | (7,877.63) |
| 10/3/97 | | 1,992.57 | | (9,870.20) |
| 10/6/97 | | 1,978.23 | | (11,848.43) |
| 10/7/97 | | 2,012.09 | | (13,860.52) |
| 10/8/97 | | 2,030.69 | | (15,891.21) |
| 10/9/97 | | 4,028.75 | | (19,919.96) |
| 10/10/97 | | 2,060.28 | | (21,980.24) |
| 10/15/97 | | 2,083.46 | | (24,063.70) |
| 10/16/97 | | 2,057.84 | | (26,121.54) |
| TOTALS | 121,750.00 | 147,871.54 | 100,260.18 | |