**In re COMPTRONIX CORPORATION, Debtor.**

**Official Committee of Unsecured Creditors, Plaintiff,**

v.

**American Sterilizer, et al., Defendants.**

**Bankruptcy No. 396–06840.
Adversary No. 398–0306A.**

United States Bankruptcy Court, M.D. Tennessee.

Sept. 24, 1999.

M. Taylor Harris, Jr., Thomas H. Forrester, Gullett, Sanford, Robinson & Martin, PLLC, Nashville, Tennessee, for plaintiff.

B. Gail Reese, Wyatt, Tarrant & Combs, Nashville, Tennessee, Susan L. Rhiel, Robert C. Folland, Thompson Hine & Flory, LLP, Columbus, Ohio, for defendant STERIS Corporation.

Paul G. Jennings, Bass, Berry & Sims PLC, Nashville, Tennessee, for Comptronix Corporation.

## MEMORANDUM

R. THOMAS STINNETT, Bankruptcy Judge.

### I.

Before the filing of its Chapter 11 petition, Comptronix did substantial business with the defendant, American Sterilizer, now STERIS. For convenience, the court will refer to the defendant only as STERIS. While Comptronix was operating as debtor in possession, the court allowed STERIS to set off its debt to Comptronix and pay the balance to the bankruptcy estate. Comptronix is no longer operating. The Creditors' Committee has been authorized to recover avoidable transfers on behalf of the bankruptcy estate.

The Committee brought this suit against STERIS to recover payments it received from Comptronix shortly before bankruptcy. The complaint alleges the payments can be recovered as preferential transfers. The Committee and STERIS have filed motions for partial summary judgment. The court can grant summary judgment to the moving party only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Bankr.P.* 7056; *Fed. R.Civ.P.* 56(c).

The motions and briefs raise two main questions under the preference statute, Bankruptcy Code § 547. First, did the payments prefer STERIS as required by § 547(b)(5)? Second, can STERIS use the new value exception set out in § 547(c)(4)? 11 U.S.C. § 547(b)(5), (c)(4). With regard to these questions, the motions essentially ask the court to decide legal issues raised by undisputed facts.

At the hearing on the motions, the court raised another question. Will recovery of the payments as preferences amount to undoing the setoff that was allowed earlier in the case? As to the setoff, STERIS owed about $467,000 to Comptronix, and Comptronix owed about $405,000 to STERIS. The court allowed the setoff pursuant to Bankruptcy Code § 553. 11 U.S.C. § 553. STERIS collected its entire $405,000 claim against Comptronix by means of the setoff and paid to the bankruptcy estate the remainder of its debt, which was about $62,000.

The Committee seeks to recover as preferential transfers five payments that Comptronix made to STERIS in the 90 days before bankruptcy. The payments totaled about $329,000. The Committee's counsel conceded at argument that it can not recover the total payments of $329,000 because STERIS has already paid about $62,000 to the bankruptcy estate. STERIS has in effect paid back $62,000 of the allegedly preferential payments. The Committee can recover at most about $267,000.

## II.

█ The court will first consider the question of whether the Committee is barred from recovering the payments as preferences because it would amount to undoing the setoff that was previously allowed. For convenience, the court will refer to the 90 days before bankruptcy as the preference period when discussing either the preference statute or the setoff statute. Both statutes use the same 90 day period. 11 U.S.C. § 547(b)(4)(A) & § 553(a)(2)(B)(i), (a)(3)(A), (b)(1)(A).

█ The court begins with an explanation of the major rules established by the setoff statute, Bankruptcy Code § 553. Section 553(a) sets out a general rule that the bankruptcy statutes do not affect a creditor's right to set off mutual prepetition debts. By prepetition debts, the court means debts that arose before the filing of the petition that commenced the debtor's bankruptcy case. The exceptions to this general rule are § 553 itself and two other statutes that are not relevant to this discussion. In other words, § 553(a) sets out a general rule that the preference statute does not affect a creditor's right to set off mutual prepetition debts.

Subsections (a) and (b) of § 553 impose limits on setoff. Subsection (a) expressly applies to postpetition setoffs (setoffs during the bankruptcy case). It limits a post-

petition setoff if the debtor was insolvent during the preference period and the creditor increased its setoff rights during that time.[1] These limits are obviously intended to reduce the preferential effect of the setoff. 4 James W. Moore, et al., *Collier on Bankruptcy* ¶ 68.12 at 904 & ¶ 68.16[2] (14th ed.1988).

Subsection (b) expressly deals with setoffs that occurred during the prepetition preference period. It adopts the improvement in position test as a limit on setoff. The improvement in position test can be explained by an example, as follows. Early in the preference period, a debtor owed a creditor $50,000, and the creditor owed it $30,000. The creditor was $20,000 behind; it could *not* have collected that amount by setoff. Subsection (b)(2) defines this as the insufficiency. 11 U.S.C. § 553(b)(2). A few days before bankruptcy, the debtor owes the creditor $45,000, and the creditor owes it $50,000. The creditor is ahead now; there is no insufficiency. The creditor's position has improved by $20,000 during the preference period. The creditor sets off. Section 553(b) allows the bankruptcy estate to recover from the creditor the $20,000 improvement in position. Obviously, the improvement in position test is aimed at reducing the preferential effect of the setoff.

Suppose the creditor in the example did not set off the debts before bankruptcy. In the bankruptcy case the debtor still owes the creditor $45,000, and the creditor still owes the debtor $50,000. The creditor files a motion in the bankruptcy court for relief from the automatic stay so that it can be allowed to set off its debt to the debtor. 11 U.S.C. §§ 553(a) & 362(a)(7).

The first question is whether the improvement in position test should apply. It appears that it should not because § 553(b) expressly applies to setoffs in the preference period. 11 U.S.C. § 553(b); 1 David G. Epstein, et al., *Bankruptcy* § 6–41 at 686–88 (1992). Some courts have

---

1. Without regard to the debtor's solvency, § 553(a) also limits setoff of claims that the creditor acquired from other creditors postpetition. 11 U.S.C. § 553(a)(2)(A).

disagreed, however. They have held that postpetition setoffs are also subject to the improvement in position test. *Durham v. SMI Industries Corp.*, 882 F.2d 881, n.4 (4th Cir.1989); *Energy Cooperative, Inc. v. Cities Service Co. (In re Energy Cooperative, Inc.)*, 130 B.R. 781 (N.D.Ill.1991).

For the moment the court assumes the improvement in position test does *not* apply. In the example, the court allows the creditor to collect the entire $45,000 it is owed by setting off $45,000 of its $50,000 debt to the debtor. Later the bankruptcy trustee brings suit to recover a $10,000 payment the debtor made to the creditor during the preference period. The creditor relies on the setoff statute for two arguments against allowing the trustee to recover the payment as a preferential transfer.

First, the creditor contends that recovery of the payment will amount to taking back $10,000 of the setoff; it will reduce the amount collected from the bankruptcy estate from $45,000 to $35,000; and that violates the general rule of § 553(a) that the preference statute does not affect a creditor's setoff rights. The court disagrees. The creditor in the example received at least $55,000, the $10,000 payment in the preference period plus the $45,000 collected by the postpetition setoff. If the trustee recovers the $10,000 prepetition payment, the creditor will still have collected $45,000 by means of the postpetition setoff. The overall effect on the creditor must be measured by considering the total paid in the preference period plus the amount collected by the postpetition setoff.

Second, the creditor relies on the anti-preference limits imposed by § 553. The creditor argues that the preference limits in § 553 have removed, to the full extent allowed by the Bankruptcy Code, the preferential effect of the prepetition transactions, including the payment in question, that determined the amounts of the mutual debts that were set off. According to the creditor, allowing the trustee to recover the payment as a preference would amount to subjecting the payment to two different anti-preference limits, one under the setoff statute and another under the preference statute.

■ These arguments appear to overstate the purpose of § 553. The limits imposed by § 553 are intended to reduce the preferential effect of the setoff itself. The limits in § 553 necessarily refer to the prepetition transactions that determined the amounts of the mutual debts. This focus on prepetition transactions does not mean § 553 is the only bankruptcy avoidance statute that can apply to those prepetition transactions.

The creditor's argument would be slightly more convincing if the court had applied the improvement in position test to the postpetition setoff. That would lead to the argument that the preferential effect of the payment has already been squeezed out; the improvement in position caused by the payment was recovered when the setoff was reduced by the amount of the overall improvement in position. The court disagrees. This argument does not lead to the conclusion that the trustee can not recover any preferential transfers that were factors in determining the amounts of the mutual debts. Of course, if a court applies the improvement in position test to a postpetition setoff, it may be necessary to reduce the trustee's preference recovery in order to prevent a double recovery. 11 U.S.C. § 550(d). It will not be necessary to deny the trustee any recovery at all.

With regard to this argument, § 553 appears to operate in the same manner as the floating lien exception in the preference statute. 11 U.S.C. § 547(c)(5). The floating lien exception deals with a perfected security interest in inventory, receivables, or the proceeds of either. In a typical case, fluctuations occur during the preference period in both the value of the collateral and the amount of the secured debt. The floating lien exception uses an improvement in position test to calculate the amount of the avoidable preference

that resulted *from the security interest.* Since one element in the improvement in position test is the amount of the secured debt, then the debtor's payments on the secured debt during the preference period will necessarily affect the outcome of the test. Nevertheless, the floating lien exception does not protect the debtor's payments from avoidance as preferential transfers. The exception is expressly restricted to transfers of a security interest. Payments on the debt are subject to the usual rules of preference law. The creditor's setoff rights are analogous to the security interest. The setoff statute limits the extent of the preference, if any, that results from the setoff. But it does not protect payments or other transfers by the debtor that affected the amounts of the mutual debts. Those transfers may be avoidable preferences.

The court concludes that § 553 and the setoff previously allowed by the court do not completely protect Comptronix' payments from being recovered as preferential transfers.

### III.

This brings the court to the STERIS's argument that the payments did not prefer it. Section 547(b)(5) deals with whether a transfer actually preferred a creditor. For a transfer to be preferential, it must have allowed the creditor to receive more than it would have received if (1) the transfer had not been made, and (2) the creditor received payment from the bankruptcy estate. 11 U.S.C. § 547(b)(5).

STERIS argues that the payments were not preferential because its setoff rights had the same effect as if its claim were fully secured. 11 U.S.C. § 506(a). Payments on a fully secured debt are not preferential. *Marlow v. Rollins Cotton Co. (In re Julien Co.),* 146 F.3d 420 (6th Cir.1998). Payments on an undersecured debt can be preferential. *Ray v. City Bank and Trust Co. (In re C–L Cartage Co.),* 899 F.2d 1490 (6th Cir.1990).

A right to setoff is not the same under state law as a security interest. Bankruptcy Code § 506(a), however, treats a claim as secured to the extent of the creditor's setoff rights. 11 U.S.C. § 506(a). Likewise, § 553 protects the right of setoff subject to some limits. These statutes require the court take into account a creditor's setoff rights when deciding whether a prepetition transfer preferred the creditor under § 547(b)(5).

The rule that payments on a fully secured debt are not preferential can be confusing. Even if the debt is fully secured at the time of bankruptcy, earlier payments on the debt may still have preferred the creditor. For example, suppose the collateral was real estate. At all relevant times, its value was $100,000. Payments in the preference period reduced the secured debt from $200,000 to $90,000. The debt is fully secured at the time of bankruptcy, but the payments obviously preferred the creditor under § 547(b)(5). This point is explained in several cases. *Porter v. Yukon National Bank,* 866 F.2d 355 (10th Cir.1989); *A.I. Credit Corp. v. Drabkin,* 49 B.R. 605 (D.D.C.1985); *Schwinn Plan Committee v. AFS Cycle & Co. (In re Schwinn Bicycle Co.),* 182 B.R. 514 (Bankr.N.D.Ill.1995); *compare Henderson v. National Bank of Commerce (In re Al–Ben, Inc.),* 156 B.R. 72 (Bankr. N.D.Ala.1991).

STERIS relies primarily on *Braniff Airways, Inc. v. Exxon Company, U.S.A.,* 814 F.2d 1030 (5th Cir.1987). Exxon's debt to Braniff at the time of bankruptcy was large enough that it could have collected by means of setoff in the bankruptcy case not only what Braniff owed it at the time of bankruptcy but also the full amount of the alleged preferences. Thus, Exxon's setoff rights prevented the payments from being preferential under § 547(b)(5). *See also Lingley v. Contractors Group, Inc. (In re NEPSCO, Inc.),* 55 B.R. 574 (Bankr.D.Me.1985).

STERIS owed Comptronix about $62,000 more than Comptronix owed it. This excess does not prove that STERIS could have collected the full amount of the alleged preferences, about $267,000, by means of setoff in Comptronix' bankruptcy case.

There is a different argument based on the proposition that payments on a fully secured debt are not preferential. It focuses on the value of the collateral at the time of the alleged preferential transfer. This is the argument that payments are not preferential if they did not diminish or deplete the debtor's assets. *Schwinn Plan Committee v. Transamerica Insurance Finance Corp. (In re Schwinn Bicycle Co.)*, 200 B.R. 980 (Bankr.N.D.Ill.1996); *Mazer v. Aetna Finance Co. (In re Zuni)*, 6 B.R. 449 (Bankr.D.N.M.1980). STERIS's motion for summary judgment appears not to rely on this argument, and the court expresses no opinion as to its viability. The court decides only that the STERIS can not show the payments were non-preferential under § 547(b)(5) merely by showing that, at the time of bankruptcy, its debt to Comptronix equaled or exceeded Comptronix' debt to it.

## IV.

■ Next, the court must deal with STERIS's argument that it can reduce the alleged preferences by the amount of subsequent new value it transferred to Comptronix after the payments in question. 11 U.S.C. § 547(c)(4). STERIS calculates that the new value transfers would reduce any recovery to about $35,000.

The court assumes for the purpose of argument that STERIS did make new value transfers as alleged. The court leaves open the factual question of whether STERIS actually provided new value to Comptronix after some or all of the payments in question.

The first issue is whether the new value exception does not apply because the setoff paid STERIS for all the new value that it provided to Comptronix in the preference period. The new value exception allows a creditor to deduct new value from earlier preferences only if "the debtor did not make an otherwise unavoidable transfer to or for the benefit of [the] creditor" on account of the new value. 11 U.S.C. § 547(c)(4)(B).

For example, suppose the debtor makes a payment on its account with the creditor, the debtor then receives another shipment from the creditor on unsecured credit, and the debtor then pays for the shipment. The trustee proves the debtor's first payment can be recovered as a preferential transfer. The creditor asserts the subsequent shipment can be deducted as new value. There are two possible outcomes depending on whether the debtor's second payment, the payment for the new value shipment, can be avoided by the trustee. First, to the extent the payment can be avoided, the shipment still counts as new value because the situation is the same as if the payment had not been made. Second, to the extent the payment can *not* be avoided, the shipment can *not* be deducted as new value. 11 U.S.C. § 547(c)(4). *Brown v. Shell Canada, Ltd. (In re Tennessee Chemical Co.)*, 159 B.R. 501 (Bankr. E.D.Tenn.1993), *modified on other grounds* 112 F.3d 234 (6th Cir.1997).

The Committee contends this case fits the second pattern because the setoff was an unavoidable transfer that paid STERIS for all the new value transfers it made to Comptronix in the preference period.

STERIS contends it will not receive a double benefit if it is allowed to deduct the new value even though it was paid by means of the setoff. The double benefit appears to be obvious. The question is whether the statute allows it. STERIS makes four arguments for allowing it to deduct the new value despite its having received full payment.

(1) The setoff was not a "transfer" on account of the new value. 11 U.S.C. § 101(54).

(2) Even if the setoff was a transfer, the new value deduction is reduced only by an unavoidable prepetition transfer, not an unavoidable postpetition transfer, such as the setoff previously allowed by the court.

(3) Even if the setoff was a transfer, it was not a transfer "on account of" the new value. *Fitzpatrick v. Rockwood Water, Wastewater and Natural Gas Systems (In re Tennessee Valley Steel Corp.)*, 201 B.R. 927 (Bankr.E.D.Tenn. 1996).

(4) Even if the setoff was a transfer, the debtor "did not make" it, and therefore it does not reduce the new value deduction. 11 U.S.C. § 547(c)(4).

For the purpose of argument, the court assumes that a setoff is a transfer as defined in the Bankruptcy Code. 11 U.S.C. § 101(54). The court agrees with STERIS's argument that the new value exception still applies because the setoff was not a transfer made by the debtor. The court does not base this result on the theory that the bankruptcy estate, not the debtor, was the transferor. The court relies instead on the fact that the debtor "did not make" the transfer that occurred when the setoff was allowed.

Consider a situation in which a debtor and a creditor are selling goods to each other on unsecured credit. During the preference period, the debtor makes a payment to the creditor, the creditor then ships more goods to the debtor, and finally the debtor ships goods to the creditor. The debtor then files bankruptcy. The bankruptcy court allows a setoff that results in the creditor receiving full payment of its debt. The trustee seeks to recover the debtor's prepetition payment as a preference. The creditor asserts the new value exception based on its shipment to the debtor. The trustee objects because the setoff resulted in payment for the shipment.

The creditor in the example then makes the same argument as STERIS. It contends that when the setoff was allowed, the debtor did not make a transfer. The debtor made prepetition transfers to the creditor, such as the debtor's last shipment to the creditor. But the evidence does not show that those transfers were made on account of the new value, either as payment in kind or in return for the new value shipments. Therefore, they do not reduce the new value deduction. The next transfer was the setoff itself. According to the creditor, the setoff was essentially like a foreclosure on collateral already in its possession, the collateral being its debt to the debtor. The creditor was able to carry it out without the debtor's cooperation. Thus, the new value deduction still applies, according to the creditor, because the debtor "did not make" the unavoidable transfer (the setoff) that paid for the new value.

The Committee contends Comptronix did make the transfer because Comptronix, as debtor in possession, asked the court's permission to allow the setoff. The court disagrees. Obtaining relief from the stay in order to allow a transfer is not equivalent to making the transfer. The effect would have been the same if STERIS had filed the motion to lift the stay.

The court agrees with STERIS's argument. The setoff itself was not a transfer made by Comptronix. The court is not faced with the question of whether Comptronix made prepetition transfers, other than payments, on account of the new value.

The new value exception lends support to this result in another way. The exception also reduces the new value deduction when the debt for the new value is secured by an unavoidable security interest. Note that the limit applies only when the creditor has a security interest. The limit does not apply when the creditor has some other kind of lien that is not a security interest. 11 U.S.C. § 547(c)(4)(A), § 101(51) & § 101(37). Setoff is similar to a lien. Cf. 11 U.S.C. §§ 506(a) & 553. Congress could have written the statute so that the

new value deduction would be reduced if the creditor had a right of setoff or a lien other than a security interest. The statute, however, does not contain any such limits. The statute reduces the new value deduction only if the debtor makes a transfer on account of the new value or the debtor has an agreement with the creditor giving it a security interest to secure the debt for the new value. Congress apparently decided not to reduce the new value deduction in every situation in which the debtor's assets have been used to pay or to secure the debt for the new value.

### V.

█ Finally, the court comes to the Committee's motion for summary judgment on the issue of insolvency. The preference statute includes a presumption the debtor was insolvent in the 90 days before bankruptcy. 11 U.S.C. § 547(f). When the plaintiff moves for summary judgment, the defendant creditor must submit at least enough evidence to rebut the presumption and thereby raise a genuine issue of fact as to whether the debtor was insolvent. *Gasmark Limited Liquidating Trust v. Louis Dreyfus Natural Gas Corp.*, 158 F.3d 312 (5th Cir.1998); *Tidwell v. Merchants & Farmers Bank (In re Dempster)*, 59 B.R. 453 (Bankr.M.D.Ga. 1984). In its responses to the motion for summary judgment, STERIS has not attempted to offer evidence of solvency. Therefore, the court finds no genuine issue of material fact, and the Committee is entitled to judgment as a matter of law holding that Comptronix was insolvent during the preference period as required by Bankruptcy Code § 547(b)(3). 11 U.S.C. § 547(b)(3).

This memorandum constitutes findings of fact and conclusions of law as required by *Fed.R.Bankr.P.* 7052.

### ORDER

In accordance with the court's Memorandum entered this date,

IT IS ORDERED that the court finds the debtor to have been insolvent as required by Bankruptcy Code § 547(b)(3) during the 90 days before the date of filing of the debtor's bankruptcy petition and grants summary judgment to the plaintiff on this point;

IT IS FURTHER ORDERED that the setoff which the court previously allowed the defendant does not prevent application of the new value exception, Bankruptcy Code § 547(c)(4), to transfers the defendant made to the debtor subsequent to the alleged preferential payments, and the court grants summary judgment to the defendant on this point; and

IT IS FURTHER ORDERED that in all other respects the motions for partial summary judgment filed by the plaintiff and the defendant are denied.