**In re GLOBE BUILDING MATERIALS, INC.,**
**Debtor.**

**Gordon E. Gouveia, Chapter 7 Trustee of GLobe Building Materials, Inc., Plaintiff,**

**v.**

**Seneca Petroleum Co., Inc., Defendant.**

**Bankruptcy No. 01–60182 JPK.**
**Adversary No. 03–6024.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Nov. 22, 2005.

Kurt M. Carlson, Esq. and Lawrence R. Drumm, Esq., Tishler & Wald, Ltd., Chicago, IL, for Plaintiff Trustee.

Richard M. Kates, Esq. and Steven P. Polick, Esq., for Defendant Seneca Petroleum, Co., Inc.

### MEMORANDUM OF DECISION

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

This case was initiated by complaint filed on January 9, 2003, to which Seneca

responded by answer filed on March 3, 2003. In this adversary proceeding, the plaintiff Gordon E. Gouveia as the Trustee of the Chapter 7 bankruptcy estate of Globe Building Materials, Inc. ("Trustee") seeks to assert the provisions of 11 U.S.C. § 547(b) to recover alleged preferential payments made by the debtor to the defendant Seneca Petroleum Co., Inc., ("Seneca"), and Seneca in turn seeks to avoid liability to repay the alleged preferential payments by assertion of the "ordinary course of business" defense under 11 U.S.C. § 547(c)(2) and the "new value" defense under 11 U.S.C. § 547(c)(4).

## I. SCOPE AND METHODOLOGY OF THE DECISION

By its order of April 12, 2005, the Court directed the manner in which the defendant's new value defense would be presented to the Court for adjudication. First, as stated in that order, the sole issue determined by this decision is Seneca's "new value" defense under 11 U.S.C. § 547(c)(4); Seneca's separately asserted "ordinary course of business" defense under 11 U.S.C. § 547(c)(2) remains for disposition by an evidentiary hearing.[1]

As the April 12, 2005 order stated, this decision will constitute a judgment on less than all issues presented in this adversary proceeding, and thus is not a final judgment pursuant to the provisions of Fed. R. Bankr.P. 7054/Fed. R. Civ. P. 54(b).

Now a note as to the methodology of deciding issues on a stipulated record, as contrasted to the summary judgment mechanism of Fed. R. Bankr.P. 7056/Fed. R. Civ. P. 56. The Court's April 12 order stated that the Court's determination of

the parties' submissions would be governed by Fed. R. Bankr.P. 7054/Fed. R. Civ. P. 54(b), and that the determination would be based on the stipulated record, rather than via a summary judgment pursuant to Fed. R. Bankr.P. 7056/Fed. R. Civ. P. 56. The parties were ordered to file a stipulation of facts, a stipulation that entirely controls the Court's determination of the new value defense. A summary judgment submission is of course governed by the rules for presentation to the Court of a record for the purposes of summary judgment provided by Fed.R.Civ.P. 56(c), a laborious process which entails submission of competing "statements of material fact"; the Court's sifting through those submissions to determine the extent to which the record discloses "genuine issues" of material fact; the familiar mantra-like incantation that all inferences are to be resolved in favor of the party opposing the summary judgment motion; the Court's inability to weigh the evidence in the competing submissions; and the denial of the motion if a wee bit of evidence suggests that the opponent could convince some reasonable person that it might prevail on a genuine issue of material fact. Not so with a determination made on a stipulated record. A stipulated record is just that-it's the entire record which will ever be before the Court with respect to the issue/issues at hand, again contrasted to a summary judgment record which will be expanded upon, and will be largely immaterial, if the summary judgment is denied and the issues sought to be determined by that mechanism are then the subject of a trial or evidentiary hearing. A stipulated record allows the Court to draw inferences in a manner which equally

---

1. The Parties have stipulated to all of the material elements necessary for the Trustee to prevail on his 11 U.S.C. § 547(b) action—subject, of course, to the affirmative defenses which Seneca has asserted—and thus the issue of the two (2) payments received by Seneca constituting preferential transfers under § 547(b) is determined for all purposes in this adversary proceeding by this judgment.

favors and/or disfavors either party, and to "weigh" the evidence in the record, unfettered by the rules for construing a record under Fed.R.Civ.P. 56(c) and (e). Finally, just as would be the case in a record presented by evidentiary trial or hearing, if the party with the burden of proof on an issue fails to sustain that burden of proof based upon the stipulated record, that party loses on that issue for all purposes in the case, and there is no "live to play another day" at trial as there would be if a summary judgment were lost because the proponent failed in his/her/its burden of proof in the summary judgment proceeding. In short, determination of a case, or of an essentially bifurcated issue, on a stipulated record is just like determination of a case based upon an evidentiary trial record, but without the trial.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and N.D. Ind. L.R. 200.1. The adversary proceeding before the Court is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## II. *FINDINGS OF FACT*

The facts are derived exclusively from the stipulated record established by the Statement of Stipulated Facts filed on May 11, 2005, and—as stated in that document—the Stipulations of Fact stated in section 5 of the Pre–Trial Statement filed on March 21, 2005. The Court determines the facts as follows, pursuant to Fed. R. Civ. P 52(a), made applicable to this adversary proceeding by Fed.R.Bankr.P. 7052.

Neither the nature of the dealings between the parties, nor the product or service provided by Seneca to Globe, was stated in the stipulated record. The record suggests, however, and the Court finds, that Globe contracted with Seneca for the purchase by the former from the latter of some type of good/goods.[2] Following a particular shipment of UPPs to Globe, Seneca would issue an invoice to Globe for payment for that shipment.

With respect to the established preferential payments, the first was made by a check dated October 24, 2000, payable to Seneca in the amount of $187,776.60. *The date of Seneca's receipt of this check is not established by the record,* but the check was deposited by Seneca on October 27, 2000, and thus the Court finds that *the latest date* upon which this check could have been received by Seneca was October 27, 2000, and that Seneca received the check on that date for the purposes of this decision. The time at which the check was received on October 27, 2000, is not established by this record. This check was subsequently honored on October 30, 2000. On October 27, 2000, Globe issued a second check to Seneca, in the amount of $169,047.13. Seneca deposited this check into its account on November 1, 2000, and thus the Court finds that *the latest date* upon which this check could have been received by Seneca was November 1, 2000, and that Seneca received the check on that date for the purposes of this decision. The time at which the check was received on November 1, 2000 is not established by this record. This check was subsequently honored on November 2, 2000.

The Stipulations of Fact stated in section 5(c) of the Pre–Trial Statement establish that both of these checks were made in payment of "antecedent debts due and

---

**2.** For the purposes of the preference action and affirmative defenses to that action in the context of this case, the identification of whatever it was the parties dealt in is immaterial. Since Seneca's corporate name suggests a business involving petroleum products, we'll label the transactions between the parties as having involved sale by Seneca to Globe of "Undifferentiated Petroleum Products" ("UPPs").

# 420

owing from [Globe] to [Seneca] before the transfers were made." The Court finds that these payments thus were not made in any manner with respect to any of the shipments of UPPs asserted by Seneca to constitute "new value", and that the invoices for those shipments remained "unpaid".

In October and November of 2000, Seneca made various shipments of goods to Globe, shipments which Seneca argues constitute new value, as follows:

| Value of Shipment ($) [3] | Shipment Date [4] | Invoice Date |
| --- | --- | --- |
| $29,446.13 | 10–25–00 | 10–31–00 |
| $29,724.50 | 10–26–00 | 10–31–00 |
| $26,004.88 | 10–27–00 | 10–31–00 |
| $29,622.13 | 10–31–00 | 10–31–00 |
| $37,027.25 | 11–02–00 | 11–02–00 |
| $25,922.00 | 11–01–00 | 11–06–00 |
| $29,740.75 | 11–02–00 | 11–06–00 |
| $22,173.13 | 11–07–00 | 11–07–00 |
| $25,805.00 | 11–09–00 | 11–09–00 |
| $26,004.88 | 11–06–00 | 11–09–00 |
| $29,610.75 | 11–07–00 | 11–09–00 |
| $25,783.88 | 11–09–00 | 11–10–00 |
| $22,381.13 | 11–10–00 | 11–13–00 |
| $18,544.50 | 11–13–00 | 11–14–00 |
| $22,065.88 | 11–14–00 | 11–15–00 |
| $29,376.75 | 11–17–00 | 11–17–00 |
| $3,739.13 | 11–15–00 | 11–20–00 |
| $432,992.67–Total | | |

As stated in footnote 1, section 5 of the Pre–Trial Statement establishes all essential facts necessary for the Trustee to sustain his burden of proof under the elements of 11 U.S.C. § 547(b) with respect to the payments made by Globe to Seneca during the preference period. The Court finds that the payment made by a check dated October 24, 2000, payable to Seneca in the amount of $187,776.60 and the payment made by a second check dated October 27, 2000, payable to Seneca in the amount of $169,047.13—each was a preferential transfer to Seneca under 11 U.S.C. § 547(b).

## III. *ISSUE*

The matter in dispute between the parties is whether the $356,823.73 of payments made by Globe to Seneca during the preference period constitute preferential payments under the provisions of 11 U.S.C. § 547(b) *which the Trustee may*

**3.** The Court finds from the parties' stipulation, and lack of assertion by the Trustee to the contrary, that the face amount of the invoice for each shipment is the amount of the value of each shipment to Globe as relevant under § 547(c)(4)—i.e., the value of the UPPs to Globe—was the price Globe was billed for the UPPs. This finding is more than amply supported by the fact that the Trustee did not assert any claim of diminished value in the parties' Pre–Trial Statement, either as a contested issue of fact or as a contested issue of law.

**4.** The record does not establish when Globe acquired a property interest in the UPPs identified to each shipment. Under the Uniform Commercial Code, several scenarios are possible, depending upon the agreement of the parties as to when Globe acquired an interest in the shipment, or the "gap filling" provisions of the UCC if the parties had no specific agreement. For example, if goods in the hands of Seneca had been specifically identified to a Globe contract prior to shipment, Globe could have acquired an interest then; if the parties had so agreed, title may not have passed until the goods were delivered to Globe, as contrasted to when the goods were placed in the hands of the shipper. Based upon the record, the Court finds—in consonance with the parties' respective contentions as evidenced by their stipulations and the arguments made in their respective memoranda—that Globe acquired an interest in each UPP shipment on the date each such shipment was made, and thus that to the extent that any shipment may constitute "new value", the relevant date for provision of new value with respect to each shipment is the "Shipment Date" in the parties' Statement of Stipulated Facts.

*recover from Seneca in light of Seneca's asserted "new value" defense.* Seneca's defense is essentially that the value of goods provided to Globe, starting with the shipment of October 25, 2000, constitutes "new value" which substantially reduces the Trustee's recovery.

### IV. *LEGAL ANALYSIS*

The Trustee's action is premised on 11 U.S.C. § 547(b), which states:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Trustee has sustained the burden of proof imposed upon him by 11 U.S.C.

§ 547(g) to establish that the payments totaling $356,823.73 made by Globe to Seneca during the 90–day period provided by 11 U.S.C. § 547(b)(4)(A) are preferences.

While Seneca does not dispute that the payments were preferences[5], it contends that nearly all of the amount of the payments is not recoverable by the Trustee based upon the provisions of 11 U.S.C. 11 U.S.C. § 547(c)(4), which states:

(c) The trustee may not avoid under this section a transfer—

. . .

(4) to or for the benefit of a creditor, to the extent that, *after such transfer,* such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

[Emphasis supplied].

■ The burden of establishing this defense is on Seneca; 11 U.S.C. § 547(g); *In re Prescott,* 805 F.2d 719, 727 (7th Cir. 1986).

■ As this Court has previously stated in *In re Globe Building Materials, Inc.,* 325 B.R. 253, 259 (Bankr.N.D.Ind. 2005), in consonance with the elements of the defense stated in *In re Prescott, supra.:*

The basic requirements of the "new value" affirmative defense were outlined as follows in *In re Sonicraft, Inc.,* 238 B.R.

---

**5.** A transfer of funds by the debtor to the defendant made by check is deemed to occur for purposes of § 547(b) when the bank honors the check. *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 1388–91, 118 L.Ed.2d 39

(1992). The two checks subject to this action were honored on October 30th and November 2nd of 2000, clearly within the 90 day preference period.

409, 414–15 (Bankr.N.D.Ill.1999) as follows:

> For a preferential transfer to be excepted from avoidance under § 547(c)(4), the following three events must have occurred, in order:
>
> (1) The creditor must have received a transfer which is otherwise voidable as a preference under § 547(b);
>
> (2) After receiving the preferential transfer, the preferred creditor must have advanced additional credit to the debtor on an unsecured basis; and
>
> (3) That additional post-preference unsecured credit must be unpaid in whole or in part as of the date of the bankruptcy petition.
>
> *Chaitman v. Paisano Auto. Liquids, Inc. (In re Almarc Mfg. Inc.)*, 62 B.R. 684, 686 (Bankr.N.D.Ill.1986), *See also Schwinn Plan Comm. v. AFS Cycle Ltd. (In re Schwinn Bicycle Co.)*, 205 B.R. 557, 568 (Bankr.N.D.Ill. 1997). If these elements are satisfied, the creditor may set off the amount of the post-preference unsecured credit still unpaid as of the date of the petition against the amount the creditor must return to the trustee on account of the preferential transfers. *Id.*

\* \* \* \* \* \* \* \* \* \* \* \*

As very cogently stated in *In re Quality Plastics, Inc.*, 41 B.R. 241, 242 (Bankr. Mich.1984):

> The purpose of the § 547(c)(4) exception is to "insulate[ ] from preference attack a transfer to a creditor to the extent that the creditor thereafter replenishes the estate." Levin, *An Introduction to the Trustee's Avoiding Powers*, 53 Am.Bankr.L.J. 173, 187 (1979). In such a situation, other creditors would not be harmed to the extent of the offset and the fundamental goal of equality of distribution is preserved.

Thus, the goal of § 547(c)(4) is to not punish a creditor who receives a preferential payment to the extent that the creditor—subsequent to the receipt of the allegedly preferential payment—replaces in the estate something of value, and to only allow the recovery of the alleged preferential payment to the extent that the value of the creditor's replacement was less than the amount of the payment received by the creditor for transactions which pre-dated the receipt of the payment.

*Id.* at 262–63.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

> ... corollary of the § 547(c)(4) defense is that it is unfair to recover a payment made to an unsecured creditor by a debtor to the extent that subsequent to the receipt of the payment the creditor provides the debtor with "new value" which theoretically will ultimately inure to the benefit of the debtor's creditors, or at least inure to the benefit of the debtor during the period between the provision of the "new value" and the date of the debtor's bankruptcy petition.

*Id.* at 263.

The method of the application of the new value defense, especially in cases dealing with multiple preferences and multiple new value advancements, has been well addressed in the following publication: David B. Young, Preferences and Fraudulent Transfers, 876 PLI/Comm 667, 771–72 (2005). The author there stated:

> The effect of § 547(c)(4) is that the creditor may offset the value of the new unsecured advances that remain unpaid against the prior avoidable preferences. Both the earlier preferences and the later new value are aggregated for this purpose. *In re Meredith Manor, Inc.*, 902 F.2d 257 (4th Cir.1990); *In re*

*Transport Assocs., Inc.*, 171 B.R. 232 (Bankr.W.D.Ky.1994). If the new value is less than the previous preferential transfers, then the transfers are avoidable only pro tanto. *In re TWA, Inc. Post Confirmation Estate*, 305 B.R. 221 (Bankr.D.Del.2004); *In re Comptronix Corp.*, 239 B.R. 357 (Bankr.M.D.Tenn. 1999); *In re Workboats Northwest, Inc.*, 201 B.R. 563 (Bankr.W.D.Wash.1996). If the unrepaid subsequent advances equal or exceed the prior preferential transfers, then the estate may not recover anything. *In re Chez Foley, Inc.*, 211 B.R. 25 (Bankr.D.Minn.1997); *In re Winter Haven Truss Co.*, 154 B.R. 592 (Bankr.M.D.Fla.1993).

It is important to remember, however, that Section 547(c)(4) establishes a subsequent advance rule, not a total net result rule. All advances and all transfers during the preference period are not aggregated and then netted to determine an overall result. Rather, *new* advances may be offset only against *previous* preferential transfers. *In re Eleva Inc.*, 235 B.R. 486 (10th Cir. BAP 1999)(defense was unavailing when new advances were made before the preferential transfer); *In re Furrs Supermarkets, Inc.*, 296 B.R. 33 (Bankr. S.D.Ohio[D.N.M.] 2000[2003]); See Robert H. Bowmar, *The New Value Exception to the Trustee's Preference Avoidance Power:* Getting the Computation Straight, 69 Am. Bankr.L.J. 65 (1995) . . . . . . . . The view of the great majority of courts . . .—and the better reasoned position—is that any subsequent advance or advances may be offset against any and all earlier preferential transfers. *Micro Innovations*, 185 F.3d at 329; *In re IRFM, Inc.*, 52 F.3d

228 (9th Cir.1995); *Meredith Manor*, 902 F.2d at 257; *[In re] Roberds*, 315 B.R. at 443 [(Bankr.S.D.Ohio 2004)]; *In re Bridge Info. Sys.[,] Inc.*, 287 B.R. 258 (Bankr.E.D.Mo.2002); *In re Contempri Homes, Inc.*, 269 B.R. 124 (Bankr. M.D.Pa.2001); *In re Jannel Indus., Inc.*, 245 B.R. 757 (Bankr.D.Mass.2000).

The Court has found that the invoices for all of the shipments for which Seneca claims "new value" remained unpaid. All of the shipments were made on an unsecured basis. The issues on this defense revolve around the manner of application of the "new value" to the preferential payments.

■ First, the Court must note that for purposes of the new value exception pursuant to § 547(c)(4), it is the date of receipt of a check, rather than the date of its honor, that applies to check payments; *In re Tennessee Chemical Co.*, 112 F.3d 234, 238 (6th Cir.1997); *Barnhill*, 112 S.Ct. at 1391, n. 9 (noting the policy underlying § 547(c) preference exceptions and the agreement among the circuit courts that the date of delivery rule should apply in such cases); *In re Phoenix Restaurant Group, Inc.*, 316 B.R. 681 (Bankr. M.D.Tenn.2004).[6] The rationale for this rule, with which the Court agrees, was stated in *In re Kroh Brothers Development Company*, 930 F.2d 648, 651 (8th Cir.1991) as follows:

> The Courts are in general agreement that section 547(c)(4) seeks to encourage creditors to deal with troubled businesses in the hope of rehabilitation. [citations omitted]. This rationale presumes that creditors who ordinarily provide goods to purchasers on credit treat payment by check as a cash transaction, and therefore ship a new

---

**6.** This parameter was stated at the earliest stages of this case in paragraph 5 of Judge Lindquist's PRETRIAL ORDER of May 24,

2003. This Judge concurs with that Judge in this principle.

order of goods upon receipt of a check [citation omitted]. Shipping on receipt rather than waiting for the check to clear, as creditors might be forced to do were a shipment not considered a subsequent advance under section 547(c)(4), does not disrupt the potential debtor's business flow. The effect of such a shipping delay, especially 'on businesses requiring perishables, such as restaurants or grocery stores, could be to push the debtors into bankruptcy rather than to keep them out' [*In re Almarc Mfg.*, 62 B.R. 684, 689 (Bankr. N.D.Ill.1986)]. Moreover, were the transfer to occur only on payment by the drawee bank, the creditor who shipped goods in the ordinary course of business in reliance on payment by check for a prior shipment would not benefit from section 547(c)(4) even though the effect on the bankruptcy estate—enhancement—would be the same as if the creditor waited for the check to clear. In effect, a rule of transfer on payment would enhance the bankruptcy estate at the creditor's expense, discouraging commerce with a shaky business [citation omitted]. A rule that a transfer occurs on delivery, then, both avoids unnecessary bankruptcies and treats creditors fairly [citations omitted]. Thus, we join those courts holding that, for purposes of section 547(c)(4), payment by check constitutes a transfer upon delivery, not upon payment.

The following explanation for the check delivery rule, also endorsed by this Court, was given in *In re Sonicraft, Inc., supra.,* 238 B.R. at 415:

The different treatment under § 547(c) may be understood when viewed in light of the underlying purposes and functions of the respective sections. § 547(b) was designed to recover funds to the estate for equitable distribution among creditors and to avoid transactions that favor certain creditors [citation omitted]. The purpose of § 547(c), on the other hand, is not to ensure equitable treatment of creditors, but instead is to encourage creditors to deal with troubled businesses on regular business terms, 'by obviating any worry that a subsequent bankruptcy filing might require the creditor to disgorge as a preference an earlier received payment.' *Barnhill,* 503 U.S. at 402, 112 S.Ct. at 1391. This policy promotes the transaction of business between creditors and struggling businesses because generally parties in a regular business transaction treat checks as cash and extend new credit immediately upon receiving a check, rather than waiting for the check to clear before shipping more goods or providing more services [citation omitted]. In short, the key purpose of § 547(c)(4) is to treat creditors who have replenished the estate after receiving a preference fairly. [citation omitted].

■ The record before the Court is devoid of any evidence regarding the specific dates on which Seneca received the two checks from Globe. Seneca could have received the first check of $187,776.60 as early as October 24th, 2000 (the date the check was dated)—or perhaps even earlier if the check had been postdated at that time—or as late as October 27th (the date Seneca deposited it into its account). But as the Court has found, the *latest* it could have been received was October 27, 2000. Similarly, Seneca could have received the second check for $169,047.13 as early as October 27th (the date the check was dated)—or perhaps even earlier if the check had been postdated at that time—or as late as November 1st (the date Seneca deposited it into its account). *But again,* as the Court has found, the *latest* it could have been received was November 1, 2000.

Because Seneca did not, or perhaps could not, provide the Court with the exact date it received the $187,776.60 check from Globe, it argues that the Court should consider the date that the check was issued—October 24, 2000—as the date from which the Court should consider its new value shipments [the first shipment was made on October 25, 2000]. Globe, on the other hand, argues that the Court should apply the date of October 30, 2000—the date that the check was honored—and consider for new value purposes those shipments starting on October 31, 2000. It is so argued respectively by the parties with respect to the second check, with of course different dates as reflects that check transaction.

The resolution of this issue is relatively simple. The burden of establishing this defense is on Seneca; § 547(g); *In re Prescott*, 805 F.2d at 727. Seneca has failed to establish that it received the $187,776.60 check on the same date that the check was issued, October 24th. The Trustee's argument that the Court should consider the date that the check was honored for purposes of § 547(c)(4), however, is likewise not persuasive. The parties have stipulated that the $187,776.60 check was deposited by Seneca on October 27th. Clearly, Seneca must have had possession of that check on that date in order to deposit it. Thus, the Court will consider October 27th as the date of the transfer for § 547(c)(4) purposes, a date from which the new value consideration will be applied. *See, In re Fuel Oil Supply and Terminaling, Inc.*, 72 B.R. 752, 764 (S.D.Tex.1987), *rev'd* on other grounds 837 F.2d 224 (5th Cir.1988) [in a 547(c)(2) action, the court held that when the date of delivery/transfer is unknown, "court will adopt the date of the signing of the check as a proxy for the date of delivery"]. On the same rationale, the $169,047.13 check was received on November 1, 2000, for the purposes of calculating new value in relation to that payment.

Next is the manner in which "new value" is applied to preferential payments, when there is a sequence of each interspersed with the other. There are two primary schools of thought. One, explained in *Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248 (D.Me.1984) and its progeny, is that a provision of new value can only be applied to the preferential payment immediately preceding it and cannot be "carried back" to other prior preferential payments. The other, which is the clear majority rule, was determined in *In re Garland*, 19 B.R. 920 (Bankr. E.D.Mo.1982), and has been adopted by at least three Circuit Courts of Appeal: *In re Meredith Manor, Inc.*, 902 F.2d 257, 259 (4th Cir.1990); *In re IRFM, Inc.*, 52 F.3d 228, 232–33 (9th Cir.1995); and *In re Micro Innovations Corp.*, 185 F.3d 329, 336–37 (5th Cir.1999). Under this rule, new value may be "carried back" to any *prior* preferential payment, not just to the immediately antecedent one. As was true with the "check receipt" rule addressed above, this issue was determined in accord with *Garland* at the earliest stages of this case, in paragraph 13 of Judge Lindquist's PRETRIAL ORDER of May 24, 2003. This Judge concurs with that Judge in this principle as well, and concurs with the rationale for this rule as stated as follows in *In re Garland*, 19 B.R. at 926:

> The Debtor–in–Possession, Garland's, urges that section 547(c)(4) be interpreted to allow set off only of new value provided immediately after one preferential and prior to the next preferential transfer. I hereby reject Garland's suggested interpretation of section 547(c)(4). Such an interpretation places limitations on the creditor's right of set off not found in the statutory language. In addition, this suggested interpreta-

tion, if applied, would be tantamount to treating the preferential transfer and subsequent unsecured advances as a substantially contemporaneous exchange, coverage of which is already provided for in section 547(c)(1).

The Court also notes that this rule is in consonance with the § 547(c)(4) policies of encouraging creditors to deal with troubled businesses and of focusing on the actual enhancement made to the estate by subsequent advances of credit, goods or services.

■ It must be borne in mind, however, that this rule is not an "aggregating" rule which totals preference payments during the applicable period (in this case 90 days prior to the petition date) and subtracts from that total all "new value" in that period for which payment has not been made. In order to adhere to the requirement of 11 U.S.C. § 547(c)(4) that any "new value" must be given *after* the preferential transfer, "new value" provided prior to a particular preferential transfer cannot be "carried forward" to any subsequent preferential transfer; the "new value" provided after a particular preferential transfer can only be carried back to antecedent preferential transfers.

■ So, how now to apply the "new value" shipments to the preferential payments? With respect to the shipments made on October 25 and on October 26, the date of shipment is the date of the provision of "new value", these shipments predate the first preferential payment, and thus these two shipments cannot be "new value" in any way. The shipment on October 27 was made on the same date as the receipt of the first check. Seneca has the burden of proof on its defense, and the record before the Court fails to establish that this shipment was made *after* the first preferential payment was received, so Seneca cannot count this shipment as "new value".

The shipment made on October 31 (valued at $29,662.13) was made after the receipt of the $187,776.60 payment, and thus counts against the Trustee's recovery of that payment, thus reducing the first check recovery to $158,154.47. The November 1 shipment was made after the first preferential payment, and thus that amount, $25,922., reduces the Trustee's recovery on the first preferential payment, netting that recovery so far at $132,232.47. Because all shipments made on or after November 2 were made after the receipt of the second preferential payment, the value of those shipments counts as "new value" for both preferential payments, under the *Garland* rule. The Court deems it consonant with commercial practice to apply payments to the oldest debt first—both because that is the manner of payment application in fact customarily employed in commercial transactions, and because this application has the effect of generally reducing the accrual of interest arising on a debt comprised of multiple billings—and thus deems that accounting principle to be applicable to the application of "new value". The total of the shipment values for the shipments made on and after November 2 is $292,253.03. Applying this amount first to the $132,232.47 balance of the first preferential payment leaves a balance of $160,020.56 to apply to the second preferential payment of $169,047.13. The difference—$9026.57—lives to fight another day.

Based upon the foregoing, the Court determines that Seneca provided unsecured new value to Globe, a new value which replenished Globe's estate and which remained unpaid, in the amount of $347,797.16. The remainder of the preference ($9,026.57) remains subject to Seneca's § 547(c)(2) defense.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Seneca Petroleum Company, Inc. is entitled to a "new value" set off of $347,797.16. pursuant to 11 U.S.C. § 547(c)(4) against the Trustee's established preferential payment recovery of $356, 823.73 pursuant to 11 U.S.C. § 547(b).

IT IS FURTHER ORDERED that a telephonic scheduling conference will be held on **January 11, 2006, at 10:30 A.M.** to schedule the trial of the remaining issues in this adversary proceeding.

Dated at Hammond, Indiana on November 22, 2005.